### ALLESANDRO et al. v. C. F. SMITH CO.

### No. 9424.

Circuit Court of Appeals, Sixth Circuit.

June 3, 1943.

Vincent P. Dacey, of Detroit, Mich., for appellants.

H. T. Ellerby, of Detroit, Mich., for appellee.

Irving J. Levy and Bessie Margolin, of Washington, D. C., Charles A. Reynard, of Cleveland, Ohio, Morton Liftin, of Washington, D. C., George L. Clarke, of Baltimore, Md., and Frederick U. Reel, of Washington, D. C., for Administrator of Wage and Hour Division, United States Department of Labor, amicus curiae.

Before SIMONS, MARTIN and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

In this case involving the coverage of the Fair Labor Standards Act, 29 U.S.C.A.

§ 201 et seq. are 80 plaintiffs, suing for extra compensation, all employees of a chain grocery operating in Detroit, Michigan, and vicinity, 70 of them drivers of delivery trucks, 3 mechanics servicing such trucks, and 2 painters. But one witness, a truck driver, was sworn for the plaintiffs, and upon inquiry as to whether others would disclose a substantially different character of employment in respect to interstate commerce, and the receipt of a negative reply, the court directed a verdict for the defendant on the ground that the plaintiffs were not engaged in interstate commerce or in the production of goods for commerce.

Appellee operates a grocery chain with several hundred retail grocery and meat stores all within the State of Michigan. For efficient and economic servicing of its retail stores it maintains a number of warehouses, its principal warehouse consisting of several buildings occupying a city block through which runs a spur track, upon which are shunted freight cars bringing goods from out of the State. In addition, the appellee receives shipments at other railroad sidings and depots. The goods thus received either are transported directly by trucks to the units of the chain, or placed in the warehouses for later distribution to the stores. Goods move out of the warehouse pursuant to orders of individual store managers. Upon receipt of such orders from the stores, the stock clerks in the warehouse set aside the merchandise called for. It is then sent down chutes to the main floor where the various items are assembled in piles under appropriate store numbers, to be loaded on trucks for delivery to the stores. Some of the appellants are engaged in delivering goods directly from the box cars to the stores, others make deliveries from the warehouse to the stores, as need arises, and some do both. Generally it is perishable goods, such as fruits and vegetables, that are delivered directly to the stores after being unloaded from the box cars on to the trucks. There is no dispute that all of the employees here involved were paid at rates below those required by the Fair Labor Standards Act.

■ The court was of the view that in respect to all of the merchandise handled or transported by the appellants, interstate movement ceased upon the arrival of the cars at the siding of the appellee, or upon other railway sidings from which the trucks received the goods and distributed them. While there is support for such conclu-

sion in some of the earlier cases, notably Jewel Tea Co. v. Williams, 10 Cir., 118 F. 2d 202; Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172, and in our dictum in General Tobacco & Grocery Co. v. Fleming, 6 Cir., 125 F.2d 596, 601, 140 A.L.R. 783, wherein it was observed that "from the description of the conduct of its (appellant's) business detailed in its answer, the [defendant] was, in no particular, engaged in interstate commerce or in the production of goods for interstate commerce," the court's conclusion, in the light of later and controlling authority, is clearly erroneous.

As early as 1923 the Supreme Court in Baltimore & Ohio S. W. R. R. v. Burtch, 263 U.S. 540, 544, 44 S.Ct. 165, 166, 68 L. Ed. 433, had said "it is too plain to require discussion that the loading or unloading of an interstate shipment by the employees of a carrier is so closely related to interstate transportation as to be practically a part of it." That the doctrine is not limited in its application to employees of an interstate carrier is demonstrated by Puget Sound Co. v. State Tax Comm., 302 U.S. 90, 58 S.Ct. 72, 82 L.Ed. 68, wherein it was held that a stevedoring company engaged in unloading ships was in foreign commerce. These cases have been followed in Super-Cold Southwest Co. v. McBride, 5 Cir., 124 F.2d 90, and Walling v. Goldblatt Bros., 7 Cir., 128 F.2d 778. It is perfectly clear from these adjudications and those later to be discussed, as well as from the observation in Kirschbaum Co. v. Walling, 316 U.S. 517, 519, 62 S.Ct. 1116, 1118, 86 L.Ed. 1638, that operators who run freight elevators in a loft building "start and finish the interstate journeys of goods going from and coming to the tenants," that all of the appellants who are employed in unloading interstate cars and moving merchandise into warehouses, or from the cars to the stores, are engaged in interstate commerce and within the coverage of the Act.

■ A different question, however, arises in respect to those employed in the movement of goods after they have been stored in the warehouses. In Walling v. Goldblatt Bros., supra, it was thought in the Seventh Circuit that warehouse employees of a chain department store are not covered by the Act. This decision was reached prior to the adjudications in Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S. Ct. 332, 87 L.Ed. ——, and Higgins v. Carr Bros. Co., 317 U.S. 572, 63 S.Ct. 337, 87 L. Ed. ——, both decided January 18, 1943.

Conceiving it to be in response to the Jacksonville case, the Third Circuit Court of Appeals in Walling v. American Stores Co., 133 F.2d 840, reached a contrary conclusion in respect to an intrastate activity bearing marked resemblance to that here involved. It dismissed the Goldblatt case as one in which the court was without the guidance of the Jacksonville and Carr Bros. cases.

The Jacksonville case dealt with the activities of the employees of a wholesaler which purchased goods in interstate commerce for distribution within the State, and held it to be clear that the purpose of the Fair Labor Standards Act was to extend federal control in this field throughout the farthest reaches of the channels of interstate commerce, and that there was no indication in the Act that, once goods entered such channels, Congress stopped short of control over their entire movement until the interstate journey was ended, and that no ritual of placing goods in a warehouse can be allowed to defeat that purpose. "The entry of the goods into the warehouse interrupts but does not necessarily terminate their interstate journey. A temporary pause in their transit does not mean that they are no longer 'in commerce' within the meaning of the Act." [317 U.S. 564, 63 S.Ct. 335, 87 L.Ed. ——.] It reasoned that if the halt in the movement of goods is a convenient intermediate step in the process of getting them to their final destination, they remain in commerce until they reach it.

But the Jacksonville case considered the movement of goods bought by a wholesaler in interstate commerce to be sold and distributed to retailers. These on the record there made fell into three categories, those purchased by the wholesaler upon the order of a customer with the definite intention that such goods shall be carried at once to the customer, those obtained by the wholesaler from the manufacturer or supplier to meet the needs of specified customers pursuant to some understanding with the customer though not for immediate delivery, and those based on anticipation of the needs of specific customers, rather than upon prior orders or contracts. Goods in the first and second category were held to remain "in commerce" and their interstate journey to end only when delivered to retail customers. Goods in the third category are not necessarily in commerce after receipt by the wholesaler. They are

said to remain in commerce only when the evidence with particularity shows them to be different from goods acquired and held by a local merchant for local disposition.

The appellants are employed in delivering warehoused goods of the third category, but even if not, we are here considering deliveries not by a wholesaler but by a retailer. Clear it is, both under allegation and proof, that the C. F. Smith Company brings nothing into the State intended for sale to any but consumers through its own retail outlets. Section 13(a) (2) of the Act recites that the provisions of §§ 6 and 7 shall not apply with respect to "any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce * * *." That the employees of the Smith Company and their activities come within the precise language of the exemption would appear to be clear, unless we should conclude as did the court of the Third Circuit in respect to the American Stores Company, that the appellee does not conduct a "retail establishment," for if it be a retail establishment not only the greater part of its selling, but all of it, is in intrastate commerce. The industry considered in Walling v. American Stores Company, supra, was, as is the Smith business, a chain store activity. It likewise operated retail stores and warehouses for the economical and efficient distribution of its merchandise to chain store units. Its activities, however, went far beyond those here involved, not only in extent, but in kind. Its warehouses contained manufacturing, processing, and packing plants, bottling works, canneries, bakeries, and coffee-roasting plants; its activities crossed state lines; and its retail stores served by different warehouses, were charged differing prices for the same goods at the same time. Conceding that from the standpoint of business integration it might conceivably be assumed that the whole enterprise was an establishment, the court concluded however, that it was quite another thing to say that it was a retail establishment when it engaged in so many important operations other than retailing, even though the retail sale was the event which effected its derivation of income. It was, the court said [133 F.2d 844], "a multi-state business structure engaged in manufacturing and processing food products, warehousing and distribution of food items" and so not comparable to retail establishments sought to be exempted by Congressional grace.

If the American Stores Company is an establishment, the Smith Company is, and no principle known to us requires distinction to be drawn in this respect between a business occupying a single store and one utilizing several or many retail outlets for the sale of its goods. No other activity such as wholesaling, manufacturing, or processing is disclosed by the record. The sole business of the Smith Company is retailing and its warehousing of merchandise without other purpose than to provide for necessary and economical distribution of merchandise to its stores for sale at retail. While it is true that the bill alleges that some of its citrus fruits came from a plant of the defendant in Lakeland, Florida, this was denied in the answer, except as a negligible amount came from defendant's land in Florida operated by independent contractors, and there was neither proof nor offer of proof that the Smith Company was a manufacturer, grower, or processor of merchandise received by it in interstate commerce.

In denying to the American Stores Company the character of a retailer, the court reviewed the legislative history of the Fair Labor Standards Act as recited in the Jacksonville Paper Company case, to show that it was the intent of the Congress to protect by the exemption " 'goods acquired and held by a local merchant for local disposition,' " and that nothing comparable to this was disclosed in respect to the American Stores Company. It will be observed, however, that resort was had to the legislative history of the Act in the Jacksonville Paper Company case to repel an inference there sought to be drawn that since retailers are excluded by reason of the express provisions of the Act, wholesalers selling only to retailers in intrastate transactions should likewise be excluded. As applicable to the activities of the Smith Company, we perceive no ambiguity in the statute which requires resort to legislative history to resolve. The Smith business is a retail business, its goods are acquired by a local merchant for local disposition and differ not at all from those of the corner grocery except in volume and perhaps in selling price. Since the court in the Jacksonville case rejected the argument that a wholesaler doing a local business would have an advantageous competitive position as compared with wholesalers doing an interstate business if it were not required to comply with the same labor standards, we must likewise reject any view that the Smith industry must be considered within the reach of the Act, because of any competitive advantage over others within its coverage.

Our conclusion is that the present case must be aligned with Walling v. Goldblatt Bros., supra, in respect to employees not engaged in the movement of goods from interstate carriers. If our distinctions do not differentiate it from the American Stores Company case we decline to follow it.

Reversed and remanded for trial, including findings and conclusions consistent herewith.