James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,

v.

LIVINGSTON & THEBAUT OIL COMPANY, Inc., et al., Appellees.

No. 16974.

United States Court of Appeals Fifth Circuit.

June 30, 1958.

Rehearing Denied Aug. 13, 1958.

Bessie Margolin, Asst. Sol., Dept. of Labor, Washington, D. C., Stuart Roth-

man, Sol., Sylvia S. Ellison, Harry M. Leet, Attorneys, United States Department of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., Birmingham, Ala., for appellant.

William R. Frazier, Jacksonville, Fla., Hill & Frazier, James P. Hill, Jacksonville, Fla., for appellees.

Before CAMERON, JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

The Secretary of Labor brought suit against the appellee corporations charging them with violations of the overtime and record keeping provisions of the Fair Labor Standards Act of 1938, as amended. 29 U.S.C.A. § 201 et seq. An injunction against violations was sought and the complaint also incorporated a prayer for general relief.

Livingston & Thebaut Oil Company, Inc., supplied gasoline and other petroleum products to thirteen filling stations in Northeast Florida which are owned or leased by appellees, their principal officers or members of the officers' families, and to fifteen filling stations owned and operated by others in areas of Daytona Beach, Florida, and Lake City, Florida. The Secretary asserted that the employees of the appellees who were engaged in the handling of goods shipped from outside the State were engaged in interstate commerce.

Livingston & Thebaut is and since January 1, 1954, has been the exclusive distributor in Northeast Florida of the petroleum products of Richfield Oil Refining Co., a subsidiary of Sinclair Refining Company, Inc. The contract between Livingston & Thebaut and Richfield provided that Richfield should sell and Livingston & Thebaut should buy the latter's entire requirements of gasoline, oils and greases, with a proviso that not less than a stated minimum nor more than a stated maximum should be purchased. Gasoline is brought into Jacksonville by Richfield, primarily by tankships, and placed in its storage tanks. Gasoline intended for the service stations in the Daytona Beach and Lake City areas is delivered into trucks of Livingston & Thebaut and by those trucks is delivered to the service stations. Gasoline intended for the filling stations operated by the appellees and individuals associated with the appellees is transferred from Richfield's storage tanks to the storage tanks, of which there are six, of Livingston & Thebaut and from these tanks gasoline is drawn and delivered as needed. Livingston & Thebaut had no pre-existing orders for the purchase of any specific quantities of gasoline. None of the appellees made sales or deliveries of gasoline or other petroleum products outside of Florida. Prior to the agreement with Richfield, Livingston & Thebaut had an arrangement with Atlantic Refining Company which, in so far as is here material, was the same as the deal with Richfield.

The district court made findings of fact upon evidence which was uncontradicted and largely stipulated. The district court found that there was no continuity of movement in interstate commerce of the gasoline purchased by Livingston & Thebaut from either Richfield or Atlantic Refining Company. The purchases of gasoline were made by Livingston & Thebaut, so the district court held, after the gasoline had come to rest in the State of Florida. It was determined by the district court that the business of the appellees, consisting of the intrastate distribution of gasoline and other petroleum products for resale, was not subject to the Fair Labor Standards Act. The district court further determined that even if one or more employees of the appellees are covered by the Act, an injunction should not issue. From the judgment of the district court dismissing the complaint with prejudice the Secretary has appealed. The initial question for our consideration is whether the district court was correct in concluding that there was no continuity of movement in interstate commerce of the gasoline purchased by Livingston & Thebaut from Richfield and Atlantic.

In the landmark case of Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460, it is held that where a wholesaler purchases goods from without the state to meet the needs of specific customers pursuant to a pre-existing contract or understanding with its customer, and there is a practical continuity of movement from the manufacturer or supplier without the state, through the distributor's warehouse, to the customers whose prior orders or contracts are being filled, the interstate movement does not necessarily end when the goods are placed in the distributor's warehouse. If the passage of the goods through the warehouse is but an intermediate step in the progress from origin to destination, the pause at the warehouse does not terminate the interstate movement. The distributor's employees whose activities, in substantial part, are related to the handling of the goods before the interstate movement has ended are covered by the Act. The Secretary finds in the holding of the Jacksonville Paper Co. case a doctrine which he believes requires the adoption of the rule for which he here contends. This case was analyzed by the Court of Appeals for the Sixth Circuit in this manner:

"But the Jacksonville case considered the movement of goods bought by a wholesaler in interstate commerce to be sold and distributed to retailers. These on the record there made fell into three categories, those purchased by the wholesaler upon the order of a customer with the definite intention that such goods shall be carried at once to the customer, those obtained by the wholesaler from the manufacturer or supplier to meet the needs of specified customers pursuant to some understanding with the customer though not for immediate delivery, and those based on anticipation of the needs of specific customers, rather than upon prior orders or contracts. Goods in the first and second category were held to remain 'in commerce' and their interstate journey to end only when delivered to retail customers. Goods in the third category are not necessarily in commerce after receipt by the wholesaler. They are said to remain in commerce only when the evidence with particularity shows them to be different from goods acquired and held by a local merchant for local disposition." Allesandro v. C. F. Smith Co., 6 Cir., 1943, 136 F.2d 75, 77.

The contention of Livingston & Thebaut is that it is in the third of the categories outlined in the foregoing quotation. Its contention is buttressed by the findings and judgment of the district court.

The gasoline that Richfield brought into Jacksonville and placed in its storage tanks was not allocated to Livingston & Thebaut in whole or in part. Although there was a contract by which Livingston & Thebaut agreed to buy and Richfield agreed to sell gasoline in overall annual quantities within the minimum and maximum of the contract, there were no pre-existing orders for any specific quantities. It may be assumed that Richfield and Livingston & Thebaut could have made a fair estimate of the probable gasoline needs of Livingston & Thebaut for some advance interval. But this kind of anticipation will not keep the goods in interstate commerce. Walling v. Goldblatt Bros., 7 Cir., 1942, 128 F.2d 778, certiorari denied 318 U.S. 57, 63 S.Ct. 528, 87 L.Ed. 1130; Jewel Tea Co. v. Williams, 10 Cir., 1941, 118 F.2d 202. Pertinent here is the holding of the Supreme Court that, "The mere fact that there may be a constant flow of commodities into a state does not mean that the flow continues after the property has arrived and has become commingled with the mass of property within the state and is there held solely for local disposition and use." Schechter Corporation v. United States, 295 U.S. 495, 55 S.Ct. 837, 849, 79 L.Ed. 1570, 97 A.L.R. 947.

Similar in many respects to the case before us is Jax Beer Company v. Redfern, 5 Cir., 1941, 124 F.2d 172. Beer made in New Orleans, Louisiana, was sold and shipped to Jax Beer Company in

Dallas, Texas. Shipments were by rail. In Dallas the beer was unloaded, for the most part, from the cars into the warehouse of Jax Beer Company. From the warehouse beer was delivered by Jax Beer Company in its trucks by its employees to its customers. Some times beer would be transferred directly from a railway car to a truck for delivery to a retail customer. It was contended that truck drivers of Jax Beer Company were engaged in interstate commerce and entitled to the benefits of the overtime provisions of the Fair Labor Standards Act. In the Jax Beer Company case, as in this case, it was contended that the interstate movement did not come to an end until the goods were delivered to the retailer. The district court so held. This Court rejected the conclusion and reversed the judgment. This Court determined that the work of delivering beer was not interstate in character. We think that in this case the interstate movement terminated when the gasoline was placed in Richfield's storage tanks just as in the Jax Beer Company case it terminated when the beer was placed in the distributor's warehouse. See General Tobacco & Grocery Company v. Fleming, 6 Cir., 1942, 125 F.2d 596, 140 A.L.R. 783.

The distinction between goods coming to rest and ceasing to be in interstate commerce, and goods continuing in an interstate movement is shown by a comparison of the case of Jax Beer Company v. Redfern, supra, with Stewart-Jordan Distributing Co. v. Tobin, 5 Cir., 1954, 210 F.2d 427, certiorari denied 347 U.S. 1013, 98 L.Ed. 1136, 74 S.Ct. 866. In the Jax Beer Company case the goods had come to rest. In the Stewart-Jordan case it was held that employees of a beer distributor were in interstate commerce when engaged in the picking up from retailers of cases of empty bottles and delivering them to the distributor's warehouse for return to the brewery in another state in accordance with an agreement. There the empty bottles had, from the time they were picked up from the retailer, an intended destination in another state, and the halt of the goods at the warehouse was but a convenient intermediate step in the interstate movement. The empty bottles were the subject of the contract of the distributor to sell and the brewery to buy the bottles. Such a situation is, and was held to be, within the continuity of movement doctrine of Walling v. Jacksonville Paper Co., supra.

The Secretary, by his brief, states that the decided case closest to the case at bar is Mid-Continent Petroleum Corporation v. Keen, 8 Cir., 1946, 157 F.2d 310, 315. Upon it the Secretary places much dependence. Mid-Continent operated a refinery at Tulsa, Oklahoma, for the production of petroleum products. It shipped its products from its refinery to bulk storage plants maintained by it in Iowa, Minnesota and Wisconsin. From these bulk plants Mid-Continent distributed its petroleum products to retail service stations. All but a negligible number of the retail service stations were owned or held under long-term leases by Mid-Continent and leased or sub-leased by it to the station operators. It was held by the court that the goods remained in the channels of commerce while in the storage tanks of the bulk plants and until they reached the retail stations. As the court, in its opinion, pointed out, "They [the bulk storage plants] were not independent wholesalers but merely the agencies of Mid-Continent for the wholesale storage and distribution of its products to the retail service stations." "In these circumstances," the court said, "we think it can not be said that the gasoline, kerosene, and lubricating oil were held at Mid-Continent's bulk plants in like manner as 'goods acquired and held by a local [wholesale] merchant for local [distribution].'" The differences between the Mid-Continent case and the case before us are obvious. If the question involved the character of the operations of Richfield or Atlantic Refining Co., the Mid-Continent case would be persuasive. We think it cannot be properly said, as the Secretary would have us say, that Livingston & Thebaut is no different from a distributing agency for Richfield's products. The other precedents upon

which the Secretary relies involve factual situations so dissimilar, we think, as to make the principles announced in them inapplicable to the instant case.

Of the reported cases to which we have been directed by counsel, that which seems to be the same in material respects is Daly v. Citrin, D.C.E.D.Mich.1943, 53 F.Supp. 876, where the same conclusion was arrived at as was reached by the district court here. Similar, and to the same effect, is Lewis v. Shell Oil Co., D.C.N.D.Ill.1943, 50 F.Supp. 547.

It has not been shown that there was error in the district court's determination that the goods had come to rest and the flow in interstate commerce had ceased. Cf. Higgins v. Carr Bros. Co., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. 468. The judgment of the district court is Affirmed.