**WALKER OIL COMPANY, Inc., and Big S Oil Company, Appellants,**

v.

**HUDSON OIL COMPANY OF MIS· SOURI, Inc., Appellee.**

No. 27264.

United States Court of Appeals Fifth Circuit.

July 9, 1969.

Petition for Rehearing Denied and Rehearing En Banc Denied Aug. 6, 1969.

Joe J. Harrell, Harrell, Caro, Middlebrooks & Wiltshire, Pensacola, Fla., for appellants.

Harry Kemker, Edward M. Waller, Jr., Fowler, White, Collins, Gillen, Humkey & Trenam, Tampa, Fla., for appellee.

Before JOHN R. BROWN, Chief Judge, DYER, Circuit Judge, and HUNTER, District Judge.

DYER, Circuit Judge:

The issue presented in this appeal by Walker Oil Company, Inc., and Big S Oil Company from a final summary judgment in favor of Hudson Oil Company of Missouri, Inc., is whether retail gasoline sales by two Hudson gasoline stations sixty miles apart and in different states are sales "in commerce" within the meaning of section 2(a) of the Robinson-Patman Act, 15 U.S.C.A. § 13(a), where the retail sales are to random members of the general public rather than to known, particular customers and are consummated entirely upon the premises of the respective stations. They are not, and consequently price differentials between the two stations do not constitute discrimination violative of the Robinson-Patman Act. We affirm.

Hudson operates forty-eight retail gasoline stations located in twenty different states, including a station on the Mobile Causeway east of Mobile, Alabama, and one in Pensacola, Florida, approximately sixty miles away. Hudson purchases the gasoline sold by the two stations from Murphy Oil Company, which operates a terminal facility in Mobile. The gasoline which Murphy sells to Hudson comes from outside the State of Alabama to Murphy's Mobile terminal where it is purchased by Hudson at wholesale prices and then transported to Hudson's Mobile Causeway and Pensacola stations by an independent motor carrier. The gasoline purchased by Hudson from Murphy is placed in storage tanks located on the premises of the Mobile Causeway and Pensacola stations upon its delivery by the independent carrier. The storage tanks are connected to the dispensing pumps of the two stations, and from the dispensing pumps the gasoline is sold to various customers.

Hudson pays the shipping costs from Mobile to its Mobile Causeway and Pensacola stations. The invoices of Murphy are forwarded to Hudson in Kansas City, Kansas, and are paid by Hudson's office in Kansas City directly to Murphy at an office of Murphy outside the State of Kansas. Hudson also pays the salaries of the Mobile Causeway and Pensacola stations' personnel by checks forwarded from Kansas City. The retail prices to be charged by the Mobile Causeway and Pensacola stations are determined, in part, by personnel of the Hudson home office in Kansas City, and the specific changes in price are directed to the two retail stations through interstate commerce facilities.

Hudson does not purchase the gasoline from Murphy to fulfill or meet contract requirements, special orders or anticipated needs of any particular customers of either Hudson or Murphy. The gasoline is held for resale at retail prices to whatever random customers may seek to purchase the gasoline at retail from Hudson's Mobile Causeway and Pensacola stations. The retail sales are always completed on the premises of the respective stations, although at frequently different prices by comparison between the two stations. The discrimination charged to be violative of the Robinson-Patman Act is discrimination between the retail prices charged at Hudson's Mobile Causeway and Pensacola stations.

Section 2(a) of the Robinson-Patman Act states in pertinent part:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are *in commerce* * * *.

We note initially that the jurisdictional commerce coverage of this section falls short of the coverage possible under Congress's Commerce Clause power or that of the broader Sherman Anti-Trust Act. Willard Dairy Corp. v. National Dairy Prods. Corp., 6 Cir. 1962, 309 F.2d 943. Under section 2(a) at least one or both of the sales alleged to be discriminatory must be "in commerce". As this Court pointed out in Hiram Walker, Inc. v. A & S Tropical, Inc., 5 Cir. 1969, 407 F.2d 4 [Jan. 31, 1969], "the Robinson-Patman Act is applicable only where the allegedly discriminatory transactions took place in interstate commerce. That is, '* * * at least one of the two transactions which, when compared, generate a discrimination must cross a state line.'" Id. at 8, 9, quoting Rowe, Price Discrimination Under the Robinson-Patman Act 79 (1962).

█ In the instant case the sales by the two retail gasoline stations are local, intrastate retail sales. They are made not to known or specific customers but rather to whatever random purchasers may wander in desiring to purchase gasoline at the set price. The sales are completed entirely upon the premises of the respective stations. The sales themselves do not cross a state line and hence

are not "in commerce" within the meaning of the Robinson-Patman Act.

We disagree with appellants' argument that the local sales in the instant case can be considered a part of the "flow of commerce" such as to be within the "in commerce" requirement of the Robinson-Patman Act. In making the determination whether a particular sale is within the "flow of commerce", cases arising under the Fair Labor Standards Act, 29 U.S.C.A. § 201 *et seq.* are helpful. *Cf.* Standard Oil Co. v. Federal Trade Comm'n, 1951, 340 U.S. 231, 71 S.Ct. 240, 95 L.Ed. 239. Under "flow of commerce" principles, goods shipped into a state are considered to remain within the flow under three circumstances: where they are purchased by the wholesaler or retailer upon the order of a customer with the definite intention that the goods are to go at once to the customer; where the goods are purchased by the wholesaler or retailer from the supplier to meet the needs of specified customers pursuant to some understanding with the customer although not for immediate delivery; and where the goods are purchased by the wholesaler or retailer based on anticipated needs of specific customers, rather than upon prior orders or contracts. *See* Walling v. Jacksonville Paper Co., 1943, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Mitchell v. Livingston & Thebaut Oil Co., 5 Cir. 1958, 256 F.2d 757; Allesandro v. C. F. Smith Co., 6 Cir. 1943, 136 F.2d 75, 149 A.L.R. 382.

None of these circumstances is present here. The demands and identity of the indefinite members of the consuming public were unascertainable prior to the time of sale. *See* Spencer v. Sun Oil Co., D.Conn.1950, 94 F.Supp. 408. *See also* Mid-Continent Petroleum Corp. v. Keen, 8 Cir. 1946, 157 F.2d 310. The instant sales were by merchants who offered their wares for sale to the trade or public at large, after the flow of interstate commerce ended and the goods came to rest within the state. *See* Mitchell v. C & P Shoe Corp., 5 Cir. 1960, 286 F.2d 109. "[T]he retail sale

of gasoline, and related products, is [generally] intrastate in character." Savon Gas Stations No. 6, Inc. v. Shell Oil Co., D.Md.1962, 203 F.Supp. 529, 534, *aff'd,* 4 Cir. 1962, 309 F.2d 306, *cert. denied,* 1963, 372 U.S. 911, 83 S.Ct. 725, 9 L.Ed.2d 719. *See* Rachal v. Allen, 5 Cir. 1967, 376 F.2d 999, 1004. The sales in the instant case were of that nature.

Affirmed.

JOHN R. BROWN, Chief Judge (concurring):

I concur in the result and in most of the opinion. I think a few things bear emphasis.

First, the discrimination forbidden by § 2(a) is between purchasers from a common seller-supplier. Here the complainants are not automobile drivers who get one price from Hudson at the Mobile Bridge and another one a few miles beyond in Pensacola, Florida. The one complaining is a competitor of the Hudson retail outlets in Pensacola.

Next, there is too much emphasis in the opinion on "crossing state lines". Granted that all would recognize that we have gone beyond the antediluvian stage of requiring a physical movement in interstate commerce to satisfy this notion, this repetition of an outworn test only adds to the problem.

Finally, the declarations of the Supreme Court in Walling v. Jacksonville Paper Co., 1943, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460, are, of course, binding as statements of law. But I don't think the Court undertook—and if it did I am at a loss to understand the source of such prescience—to declare what is in interstate commerce as a matter of economic fact. Surely business has changed since 1943. Indeed over 50% of today's occupations were not in existence at that time. This statute deals with economic impacts in an economic atmosphere. Judges, I submit, should look to economic facts for their disclosed wisdom, not some doubtful, and now time-eroded pronouncement having a Delphic (but questionable) ring.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.