**Joseph LoCICERO and Dot'l Enterprises, Inc., Plaintiffs,**

**v.**

**HUMBLE OIL & REFINING COMPANY, Defendant.**

**Civ. A. No. 69–2124.**

United States District Court, E. D. Louisiana, New Orleans Division.

Nov. 9, 1970.

Jerry A. Brown, Richard W. Bussoff, New Orleans, La., for plaintiff.

Bernard J. Caillouet, Lancelot P. Olinde, Francis J. Mooney Jr., New Orleans, La., William Simon, Washington, D. C., for defendant.

RUBIN, District Judge:

When he was denied renewal of a lease to operate an Esso station, Joseph LoCicero sued Humble Oil and Refining Company, which was both his landlord and supplier, claiming that it had violated the antitrust laws in two ways: it had engaged in a conspiracy to fix prices in violation of the Sherman Act, 15 U.S.C. sections 1 and 2, and it had exacted an illegal tie-in arrangement in contravention of both the Sherman Act and the Clayton Act, 15 U.S.C. §§ 1, 2, and 14.

Humble contends, by a motion for summary judgment, that the court lacks subject matter jurisdiction of the antitrust charges.[1] The motion is founded on a fugacious base, however, for there are disputed factual issues relative to

---

1. Although the defendant denominated his motion "motion to dismiss," both parties have filed affidavits and the court will treat the motion as one for summary judgment.

jurisdiction sufficient to preclude dismissal on affidavits and depositions alone. Lack of jurisdiction may ultimately be shown, but it has not yet been demonstrated with the clarity required to support dismissal without a trial.[2]

In pertinent part, the first section of the Sherman Act provides:

"Every contract, combination * * * or conspiracy, in *restraint of trade or commerce among the several States, or with foreign nations,* is declared to be illegal: * * *" (15 U. S.C. § 1; emphasis supplied).

Section 2 states:

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or *commerce among the several States, or with foreign nations,* shall be deemed guilty of a misdemeanor, * * *" (15 U.S.C. § 2; emphasis supplied).

Humble asserts that the retail sale of gasoline is inevitably and always an intrastate transaction. This may be disputable but we assume its correctness arguendo.[3] However it is a non sequitur to conclude from this proposition that no intrastate transaction or group of intrastate transactions can constitute a restraint of trade or commerce among the states. The Sherman Act condemns conspiracies that restrain trade or commerce among the states even though the acts constituting the conspiracy are wholly intrastate. It seeks to avoid the unlawful result of these acts whether accomplished in the course of interstate commerce or by purely local activities.

Thus it has been repeatedly held that the interstate commerce requirement of the Sherman Act is satisfied if it is shown either that the defendant committed the unlawful acts in the flow of interstate commerce *or* that the acts, though done in local or intrastate trade, nevertheless had a direct and substantial effect on interstate commerce. Radiant Burners, Inc. v. People's Gas, Light & Coke Co., 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961); Page v. Work, 9 Cir. 1961, 290 F.2d 323; Donlan v. Carvel, D.Md., 209 F.Supp. 829 (1962).

■ For purposes of the price-fixing allegation, it is unnecessary to determine whether the transactions between Humble and LoCicero were interstate in nature. The business of a victim of a conspiracy in restraint of trade may be wholly local, but if the defendant's restraint is accomplished through interstate trade or substantially affects that trade, the Sherman Act has been violated. United States v. Frankfort Distilleries, 1945, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951; Savon Gas Stations No. 6, Inc. v. Shell Oil Co., D.Md.1962, 203 F. Supp. 529, aff'd 4 Cir. 1962, 309 F.2d 306, cert. denied 372 U.S. 911, 83 S.Ct. 725, 9 L.Ed.2d 719 (1963).

Humble Oil drills, refines and distributes oil and its related products. It sells these products through 326 service stations in Louisiana. Persons engaged in interstate commerce, truck lines, and businesses engaged directly in commerce buy its products. If a price fixing conspiracy existed, it affected all of them, and not merely the housewife who happened to fill the tank of her automobile at LoCicero's station.

The emphasis on the incidental fact that LoCicero's service station was not on an interstate highway is misplaced. Many Esso stations are on such highways, and the court itself has used its Esso credit card to buy gas from such stations while engaged in interstate travel. The ultimate issue is whether the total conspiracy affected interstate

---

2. The case is now set for trial and the motion was filed only after the pre-trial conference. Had it been filed earlier, it might have been appropriate to hold a separate hearing on the jurisdictional issue alone. But the motion comes too late for that procedure now.

3. Humble relies upon Rachal v. Allen, 5 Cir. 1967, 376 F.2d 999, 1004; Savon Gas Stations No. 6, Inc. v. Shell Oil Co., D.Md.1962, 203 F.Supp. 529, aff'd 309 F.2d 306, cert. denied 372 U.S. 911, 83 S.Ct. 725, 9 L.Ed.2d 719 (1963) and cases cited therein.

commerce, not whether this effect arose from the impact of the conspiracy on the plaintiff alone.

◼ Because of the nature of the issues and the difficulty of pleading precisely the effects on interstate commerce before discovery, summary disposition of private antitrust actions should be sparingly granted. Poller v. CBS, (1962), 368 U.S. 464, 82 S.Ct. 486, 491, 7 L.Ed.2d 458; Radovich v. NFL, (1957) 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456; Chapiewsky v. G. Heileman Brewing Co., W. D.Wis., 1968, 297 F.Supp. 33. The moving party must positively and clearly demonstrate that there is no genuine issue of fact, and any doubt as to the existence of such an issue is resolved in the opponent's favor. Nat'l Screen Service Corp. v. Poster Exchange, Inc., 5 Cir. 1962, 305 F.2d 647.

◼ Here, discovery has been substantially completed insofar as the trial issues originally contemplated were concerned. But the evidence brought to the court's attention with respect to jurisdictional facts is not conclusive. The plaintiff has alleged that Humble's operations were in interstate commerce. The defendant has failed to negate the possible existence of an interstate trade in the marketing of gas and oil and related products that would be affected by the alleged price-fixing. Neither is it clear what effect, if any, a price fixing conspiracy with respect to retail sales would have on oil drilling and refining operations or on interstate shipments of crude oil. Since the resolution of these issues must await a further development of the facts, the summary judgment motion can not be granted.

◼ Plaintiff has further alleged that Humble tied the purchase of batteries, tires and other accessories (BTA) to the purchase of its gasoline in violation of the third section of the Clayton Act, 15 U.S.C. § 14. This section provides:

"It shall be unlawful for any person engaged in commerce, *in the course of such commerce*, to lease or make a sale or contract for sale of goods, * * * on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods * * * of a competitor or competitors of the lessor or seller, * * *" (15 U.S.C. § 14; emphasis supplied).[4]

The Clayton Act makes it easier to prove the illegality of a tie-in requirement than does the Sherman Act.[5] But, as the language quoted above indicates, its jurisdictional requirements are more stringent. The offense must occur "in the course of such [interstate] commerce." Under the Clayton Act, the unlawful transactions must take place in the flow of interstate commerce; impact on such commerce, no matter how substantial, is insufficient. Standard Oil Co. v. F. T. C., 340 U.S. 231, 71 S.Ct. 240, 95 L.Ed. 239 (1951); Willard Dairy Corp. v. National Dairy Products Corp., 6 Cir. 1962, 309 F.2d 943; *cf.* Walker Oil Co. v. Hudson Oil Co. of Missouri, 5 Cir. 1969, 414 F.2d 588.

What constitutes the flow or current of commerce is not a technical legal conception, but a practical one drawn from the course of business, Swift and Co. v. United States, (1905) 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518. It is dependent upon the economic facts of

---

4. 15 U.S.C. § 12 defines "commerce" as "trade or commerce among the several States and with foreign nations, * *"

5. In Times-Picayune Pub. Co. v. United States, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277, the Supreme Court stated: " * * * from the 'tying' cases a perceptible pattern of illegality emerges: When the seller enjoys a monopolistic position in the market for the 'tying' product, *or* if a substantial volume of commerce in the 'tied' product is restrained, a tying arrangement violates the narrower standards expressed in § 3 of the Clayton Act because from either factor the requisite potential lessening of competition is inferred. And because for even a lawful monopolist it is 'unreasonable, *per se*, to foreclose competitors from any substantial market', a tying arrangement is banned by § 1 of the Sherman Act whenever *both* conditions are met."

each case. See Walker Oil Co. v. Hudson Oil Co. of Missouri, 5 Cir. 1969, 414 F.2d 588, at 590 (concurring opinion).

LoCicero has alleged that the BTA are manufactured outside of Louisiana and distributed by Humble to its station operators. It is not clear whether these items are shipped from the manufacturers directly to the operators. But if they are, and if a tie-in requirement is shown, then it might be concluded that this was "in the course of such [interstate] commerce."

It is also possible that some or all of the BTA's are shipped from an out-of-state manufacturer to a Humble warehouse in Louisiana and then to the operator. Whether this warehousing operation, if it occurs, would take the goods out of the interstate current and immunize any later tie-in requirement from the strictures of the Clayton Act depends on several material factual issues as yet unresolved in this proceeding. Fifth Circuit cases make clear that the conclusion rests on whether the warehouseman acts as an independent businessman or as an agent of the manufacturer,[6] and on the nature of his contractual relationship with his customer.[7] Humble suggests that contrary authority is to be found in Uniform Oil Co. v. Phillips Petroleum Co., 9 Cir. 1968, 400 F.2d 267. There the plaintiffs relied primarily for the invocation of jurisdiction on out of state drilling for oil. The court affirmed a directed verdict for the defendant because the plaintiff had failed to introduce any evidence of the amount of out-

of-state oil involved. Thus there was nothing upon which a jury might have based an assessment of the substantiality of the effect on interstate commerce.

But here we have a motion for summary judgment before the evidence has been presented. If, at the end of plaintiff's case, there is still no evidence of substantial effect on interstate commerce, then a directed verdict against the plaintiff on this issue would be proper.

The defendant has submitted an affidavit that showed that over a four day period only 12 out of 952 customers of Bissonette purchased products in connection with an interstate journey. This would seem to mean that approximately 1,000 interstate travelers per year bought products at this station. No information is submitted on the number of interstate travelers who purchased petroleum products at all of the gas stations allegedly affected by the claimed fixing of prices.

Of course the opponent of a summary judgment motion is "under a duty to show he can produce evidence at the trial, and is not entitled to a denial of that motion upon the unsubstantiated hope that he can produce such evidence at the trial." Chapman v. Rudd Paint & Varnish Co., 9 Cir. 1969, 409 F.2d 635; First National Bank of Arizona v. Cities Service Co., 1968, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569.

LoCicero has met this burden with respect to the claim of a horizontal conspiracy. The statement of the facts in

---

6. Mitchell v. Livingston & Thebaut Oil Co., 5 Cir. 1958, 256 F.2d 757.

7. In Walker Oil Co. v. Hudson Oil Co. of Missouri, 5 Cir. 1969, 414 F.2d 588, the Court ruled:

"Under 'flow of commerce' principles, goods shipped into a state are considered to remain within the flow under three circumstances: where they are purchased by the wholesaler or retailer upon the order of a customer with the definite intention that the goods are to go at once to the customer; where the goods are purchased by the wholesaler

or retailer from the supplier to meet the needs of specified customers pursuant to some understanding with the customer although not for immediate delivery; and where the goods are purchased by the wholesaler or retailer based on anticipated needs of specific customers, rather than upon prior orders or contracts. See Walling v. Jacksonville Paper Co., 1943, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Mitchell v. Livingston & Thebaut Oil Co., 5 Cir. 1958, 256 F.2d 757; Allesandro v. C. F. Smith Co., 6 Cir., 1943, 136 F.2d 75, 149 A.L.R. 382."

dispute, which appears in his memorandum of law and not in his Statement of Material Facts suggests that there is evidence not only of a conscious parallelism of price (insufficient standing alone under Theatre Enterprises, Inc. v. Paramount, 1954, 346 U.S. 537, 74 S.Ct. 257, 98 L.Ed. 273) but also of collusion between the sales supervisors of the major oil companies.

In their depositions, Humble employees testified that they possessed invoices and other pricing information of competitors, and that these were utilized in setting Esso prices. This evidence seems sufficient under the *Bank* interpretation of *Poller* to bring the issue before the jury. There cross-examination can be utilized to discover the method of obtaining this information and the use that was made of it. The jury will be able to evaluate the testimony adduced.

Since the material questions of fact have not yet been resolved beyond genuine dispute, their determination must be left until the trial, when the underlying facts can be more adequately developed. Hence the motion for summary judgment is denied.