### ASHLAND REFINING CO. v. FOX.
### No. 3326.

District Court, S. D. West Virginia, at Charleston.

July 11, 1935.

E. L. McDonald, of Lexington, Ky., and Brown, Jackson & Knight, of Charleston, W. Va., for plaintiff.

Homer A. Holt, Atty. Gen., and Ira J. Partlow, Asst. Atty. Gen., for defendant.

Before SOPER, Circuit Judge, and McCLINTIC and CHESNUT, District Judges.

SOPER, Circuit Judge.

Ashland Refining Company, the plaintiff herein, attempts to distinguish this case from the companion case of Gulf Refining Co. v. Fox, 11 F. Supp. 425, decided this day, on the ground that its relationship to the operators of the 82 filling stations upon which it has been taxed is merely that of vendor and vendee, and that it has no control or right of control over them. The stipulation of facts shows that the plaintiff is engaged in its own name, and through subsidiary corporations, in manufacturing gasoline and other petroleum products in Kentucky, and in distributing them at wholesale and at retail in Kentucky, Ohio, and West Virginia. Distribution in West Virginia is made through seven bulk plants or wholesale depots to three filling stations owned by the plaintiff, and the 82 filling stations in controversy in this case. Prior to 1930, the West Virginia business consisted in sales of gasoline at wholesale to customers, almost all of whom were independent owners or operators of filling stations. In 1930 it began to use lease and agency agreements, in order to meet the competition of larger refiners, and to eliminate certain trade abuses and unfair practices, such as price cutting and rebating, and to enable the business to be conducted at a profit. It desired to conform to the price structures and trade practices established by its competitors, and to allow to the dealers the same margin of profit as was accorded to dealers under similar agreements with its competitors, and also to install its own equipment for use by the dealers; otherwise the plaintiff would have invited retaliation and would have run the danger of price wars.

The lease and agency agreement adopted by the plaintiff was in two parts, consisting of a lease from the operator to the plaintiff, and a lease back from the plaintiff to the operator, coupled with a consignment and limited agency agreement. The arrangement provided for an allowance to the dealer of a rental of usually 1 cent per gallon, in addition to the usual profit of 2½ cents per gallon, representing the difference between the wholesale and retail price of the gasoline. Provision was also made for the delivery of gasoline by the company to the dealer upon consignment; and the operator agreed that he would pay all labor and help at his own expense, and all necessary expenses incurred in the operation of the business, and that he should have no authority to act for or bind the company in any manner.

In 1932 the plaintiff abandoned this method of selling its products, and since January 1, 1933, the gasoline has not been consigned but has been sold outright by the plaintiff to the lease and agency operators on the same basis as its goods have been sold to independent operators. In addition, the margin of profit of the independent operators has been increased by an amount equal to the rental of 1 cent per gallon paid by the plaintiff to the lease and agency operators. In other words, the station rental under the contract is included in the margin allowed the lease and agency operators between the wholesale and retail prices, so that this margin is the same both in the case of the lease and agency dealers and the independent dealers. No writing was executed to evidence the modification of the lease and agency agreements, but the parties did agree to the changes above described.

The plaintiff enumerates a number of unimportant details in which its arrangement with the lease and agency operators differs from the A. L. D. arrangement of the Gulf Company; but these differences of themselves do not create a substantially different relation. The modification made by the plaintiff in 1932 from sales on consignment to outright sales was paralleled by the change from the A. D. A. to the A. L. D. in the Gulf organization. The contention now seems to be made that, since the modification, the plaintiff does not pay any rent for the premises leased from the dealer, and that there remains merely the semblance of a lease and a sales agreement which

have, for all practical purposes, been terminated. The factual basis for this argument is not established by the stipulation. The lease from the dealer to the plaintiff was not abrogated and the rental payment from the plaintiff to the dealer was not abandoned. What happened was that the profit allowed to the independent dealer was increased by the amount of the rental allowed to the lease and agency operator. The motive for thus giving a preferred status to the independent operator is not disclosed. Perhaps it may be that the independent dealers were in possession of preferred locations and in a stronger position to bargain with the plaintiff. However this may be, it cannot be said that the lease and agency agreement was abandoned merely because the position of the independent operator was improved.

As a matter of fact, the lease and agency agreements have been retained, doubtless for the same reasons which impelled their adoption. They provide that either party may cancel and terminate the agreement at any time upon ten days' written notice to the other party; and that upon termination of the agreement the dealer shall immediately surrender possession of the premises to the plaintiff. Thereafter, according to the terms of the documents, the plaintiff would hold the premises under the original two-year lease from the dealer. These provisions for the termination of the arrangement and the retention of possession by the plaintiff give the plaintiff substantial control of the situation. It is stipulated that, although the plaintiff does not require the operators to operate their stations in accordance with its wishes, it does endeavor to persuade them not to engage in market practices which will disturb the price structure of the operator, and that it may bring pressure upon them to keep them in line on prices, and that this may be accomplished by the termination of the agency.

It is pointed out, however, that in the A. L. D. arrangement of the Gulf Company, the right of termination of the agency agreement was not mutual; and it is contended that the provisions in the lease and agency agreement for the retention of possession of the premises by the plaintiff company upon cancellation is so inequitable as to be invalid. In this respect, reliance is placed upon the decision in Texas Co. v. Northup, 154 Va. 428, 153 S. E. 659, in which such a view was taken in regard to a somewhat similar contractual situation, when the oil company endeavored to cancel a sales contract and to retain possession of the premises under a nominal rental. In this case, as in Standard Oil Co. v. O'Hare, 126 Neb. 11, 252 N. W. 398, it was held that the separate documents were in fact parts of one contract, and should stand and fall together.

We need not decide in this case whether the plaintiff, under its contractual arrangement with the dealer might arbitrarily cancel the lease and agency agreement and retain possession of the premises; but we think it is clear, on the other hand, that the dealer may not enter into the contracts described, promising, in case of cancellation, to surrender possession to the plaintiff, and then, after the plaintiff has installed its equipment upon the premises, give notice of cancellation, and, contrary to his promise, require the plaintiff to withdraw from the premises. Such conduct would be as inequitable on his part as the conduct of the oil company condemned in Texas Co. v. Northup, supra. In this connection see Phillips Petroleum Co. v. Skinner, 140 Kan. 413, 36 P.(2d) 968; and Shell Petroleum Corp. v. Ford, 255 Mich. 105, 237 N. W. 378, also reported with notes in 83 A. L. R. 1413. Moreover, it may be inferred that the dealer entered into the arrangement willingly in the first place, and ordinarily would deem a cancellation against his interests.

It follows that the agreements between the plaintiff company and the dealers, which are still extant and in effect, are not ineffectual. On the contrary, they confer substantial rights in the premises upon the plaintiff; and the power in the plaintiff to influence and control the actions of the operators leads, as in the case of the Gulf Refining Company, to the conclusion that the filling stations conducted by the lease and agency operators are operated or controlled by the plaintiff company within the meaning of the West Virginia Chain Store Act (Acts 1933, c. 36).

The bill of complaint will be dismissed.