James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,

v.

C & P SHOE CORPORATION, Appellee.

No. 18352.

United States Court of Appeals
Fifth Circuit.

Dec. 23, 1960.

Rehearing Denied Jan. 20, 1961.

**110**

Beate Bloch, Atty., Dept. of Labor, Bessie Margolin, Asst. Solicitor, Dept. of Labor, Washington, D. C., Harold C. Nystrom, Acting Solicitor of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., Birmingham, Ala., for appellant.

Maurice Epstein, Schneider, Bronstein & Shapiro, Boston, Mass., for appellee.

Before TUTTLE, Chief Judge, and RIVES and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

One of these consolidated cases was brought by the Secretary of Labor under Section 17 of the Fair Labor Standards Act (29 U.S.C.A. § 217) to enjoin appellee from violating the minimum wage, overtime, record-keeping, and child labor provisions of the Act. The other five cases were brought under Section 16(c) of the Act [29 U.S.C.A. § 216(c)] to recover unpaid minimum wages and unpaid overtime compensation claimed to be due and owing to 33 present and former employees. Defendant concedes that it has not complied with the minimum wage and overtime requirements of the Act. It contends, however, that the Act was inapplicable to the employees for whose benefit the action was brought. The trial court agreed, and entered judgment for the defendant.

■ Appellee, C & P Shoe Corporation, and its four subsidiary corporations own and operate twenty retail shoe stores within the State of Florida. C & P also owns and operates a central office and warehouse in Fort Lauderdale, Florida. The employees whose activities are involved in this case work in and about the Fort Lauderdale warehouse. Substantially all of the shoes which are sold at retail by the C & P chain are first received at the Fort Lauderdale warehouse from manufacturers and suppliers located outside the State of Florida. At the warehouse, the shoes are unloaded,[1] and a receiving list is prepared, noting the types, sizes and styles of shoes received. This list is sent to the office, where distribution sheets are then pre-

---

1. The court below found:

"4. Once ordered, the shoes are delivered by interstate trucks to the defendant's warehouse. Upon their arrival, they are unloaded by the drivers of the said trucks (except on rare occasions) without the assistance of defendant's employees. Although there was some testimony to the effect that defendant's warehousemen occasionally assisted, the Court finds that they were instructed not to do so, and generally did not participate in unloading operations."

pared designating those stores which will receive the shoes. The cartons in which the shoes arrive are then broken down and the shoes separated in accordance with the distribution sheet. The shoes are "tagged" with a price and code number and shipped on to the retail stores. About half the shoes are distributed immediately following their receipt at the warehouse. The remainder are stacked in the warehouse, where a 30-day inventory is maintained.

The determination of this case centers on an interpretation of Walling v. Jacksonville Paper Co., 1943, 317 U.S. 564, 568, 63 S.Ct. 332, 335, 87 L.Ed. 460, wherein the Supreme Court noted:

"The entry of the goods into the warehouse interrupts but does not necessarily terminate their interstate journey. A temporary pause in their transit does not mean that they are no longer 'in commerce' within the meaning of the Act. * * * if the halt in the movement of the goods is a convenient intermediate step in the process of getting them to their final destinations, they remain 'in commerce' until they reach those points. Then there is a practical continuity of movement of the goods until they reach the customers for whom they are intended. That is sufficient. Any other test would allow formalities to conceal the continuous nature of the interstate transit which constitutes commerce."

This is the test we must apply in determining whether the shoes came to rest when they were deposited on the receiving platform of the C & P warehouse by the interstate truckers or whether the shoes remained in commerce when the employees on whose behalf the Secretary here sues performed their services on, or in connection with, the shoes.[2]

In Mitchell v. Livingston & Thebaut Oil Company, 5 Cir., 1958, 256 F.2d 757, 759, this Court adopted the Sixth Circuit's analysis of the Jacksonville Paper case, to-wit:

"'* * * the Jacksonville case considered the movement of goods bought by a wholesaler in interstate commerce to be sold and distributed to retailers. These on the record there made fell into three categories, those purchased by the wholesaler upon the order of a customer with the definite intention that such goods shall be carried at once to the customer, those obtained by the wholesaler from the manufacturer or supplier to meet the needs of specified customers pursuant to some understanding with the customer though not for immediate delivery, and those based on anticipation of the needs of specific customers, rather than upon prior orders or contracts. Goods in the first and second category were held to remain "in commerce" and their interstate journey to end only when delivered to retail customers. Goods in the third category are not necessarily in commerce after receipt by the wholesaler. They are said to remain in commerce only when the evidence with particularity shows them to be different from goods acquired and held by a local merchant for local disposition.' Allesandro v. C. F. Smith Co., 6 Cir., 1943, 136 F.2d 75, 77, [149 A.L.R. 382]."

As to the first category in the foregoing analysis, i. e., "those purchased by the wholesaler upon the order of a customer * * *," the district court found: "No ordering is ever done by the retail stores * * *. The decisions as to what shoes shall be sent to and sold in the retail stores are made in the defendant's central office and warehouse * * *. No shoes are ever purchased on the basis of any prior order from * * * any customer or retail store in the chain."

2. The trial court concluded that "the interstate journey of the shoes shipped to the defendant from outside the state ended with the unloading of such goods on the warehouse platform."

Category two in the Jacksonville Paper case consisted of goods "obtained by the wholesaler from the manufacturer or supplier to meet the needs of specified customers pursuant to some understanding with the customer * * *." The court below found that "no shoes are ever purchased on the basis of * * * any contract with * * * any customer or retail store in the chain, or pursuant to any understanding with any customer, or with any individual retail store in the chain * * *."

Under such findings, the district court held that the Secretary has not brought C & P within the scope of the first two categories. As to the contention under the third category, that the shoes are "in commerce" in the C & P warehouse only because the shoes were brought into the warehouse "based on anticipation of the needs of specific customers," the district court found "while the needs of individual retail stores are never considered, except on an over-all chain basis, goods are ordered, received and stored in the warehouse in anticipation of the needs of the stores." Since the customers to whom the shoes would be shipped were identifiable when the shoes were ordered from the manufacturer,[3] it would appear that the Secretary has brought the activities at the C & P warehouse into the confines of the third category treated in the Jacksonville Paper case. The Sixth Circuit, 136 F.2d 75, 77, noted, "[g]oods in the third category are not necessarily in commerce after receipt by the wholesaler. They are said to remain in commerce only when the evidence with particularity shows them to be different from goods acquired and held by a local merchant for local disposition."

We think it is evident that the "holding" of the shoes at the C & P warehouse was unlike the "holding by a local merchant for local disposition." We believe that this latter class is composed largely of merchants who offer their wares to the public or trade at large, as the Jacksonville Paper Company did.[4] Contrast that enterprise with the C & P warehouse. The C & P warehouse made no effort to sell to non-owned retailers. It was, instead, an agency of the C & P Shoe Company which existed for the sole purpose of storing and distributing shoes to its wholly-owned retail stores.[5]

Nor need we base this judgment on such a narrow ground. To apply the categories established in Jacksonville Paper, supra, to a chain store warehouse would be to elevate form above substance.[6] Where, as in Jacksonville Paper, we deal with a wholesaler and numerous independent retailers, it is reasonable to look for formal orders, contracts and understandings between the parties. But, where retail units are owned by the wholesaler, as here, such formal dealings are usually absent. This is so because the same party or parties control both and set policy for both. In the case at bar, the General Manager supervised both the buying of the shoes and their distribution to the retail units. To expect the General Manager to send formal orders to himself, as manager of the warehouse, or to contract with himself where he represents both the management of the wholesaler and the retailers, would be the ultimate in artificiality. And, if the categories established in the Jacksonville Paper case are inapposite to the chain store warehouse situation, the general test of "practical continuity of

3. The court below found that "one hundred per cent (100%) of the shoes which are handled [in the C & P warehouse] are ordered with the intention that they ultimately will be sold through the defendant's retail stores."

4. See Walling v. American Stores Co., 3 Cir., 1943, 133 F.2d 840, 846.

5. Cf. Beggs v. Kroger, 8 Cir., 1948, 167 F.2d 700, 703; Mid-Continent Petroleum Corporation v. Keen, 8 Cir., 1946, 157 F.2d 310, 314; Walling v. Mutual Wholesale Food & Supply Co., 8 Cir., 1944, 141 F.2d 331, 339.

6. See Walling v. Jacksonville Paper Co., 1943, 317 U.S. 564, 568, 63 S.Ct. 332, 87 L.Ed. 460; Mitchell v. C. W. Vollmer & Co., 1955, 349 U.S. 427, 429, 75 S.Ct. 860, 99 L.Ed. 1196.

movement" laid down in that case controls. We find such continuity in the movement of the shoes *through* the C & P warehouse.[7]

What we say here is not in conflict with this Court's decision in Mitchell v. Livingston & Thebaut Oil Company, supra. That case concerned the activities of an oil distributor who *purchased, within the state in which he operated, the commodities which he distributed.* Thus, the goods came to rest prior to Livingston & Thebaut's initial contact with them.[8] Here, C & P purchased the shoes it received from sources outside the State of Florida.

■ A few subsidiary questions remain. The defendant urges that an injunction is not needed in this case, while the Secretary points to our recent cases of Mitchell v. Hausman, 5 Cir.,

1958, 261 F.2d 778, 780, and Mitchell v. Blanchard, 5 Cir., 1959, 272 F.2d 574. Obviously, however, the primary decision of that question rests with the district court. Mitchell v. Lublin, McGaughy & Associates, 1959, 358 U.S. 207, 215, 79 S.Ct. 260, 3 L.Ed.2d 243.

■ The defendant urges that the five actions seeking recovery of minimum wages and overtime compensation involve "an issue of law which has not been settled finally by the courts," and, hence, that the Secretary has no authority to sue.[9] As has been aptly noted by the Fourth Circuit, an extreme application of that test "would virtually nullify the salutary provision for the recovery of unpaid compensation without expense to the claimant." [10] We think that the issues of law in these cases were settled with reasonable finality in Walling v. Jacksonville Paper Co., supra,[11] subject

---

7. In accord with our decision is Walling v. Mutual Wholesale Food & Supply Co., 8 Cir., 1944, 141 F.2d 331; Walling v. American Stores Co., 3 Cir., 1943, 133 F. 2d 840. See also, Sucrs. De A. Mayol & Co. v. Mitchell, 1 Cir., 1960, 280 F.2d 477.

   What we say here appears contrary to the Seventh Circuit's decision in Walling v. Goldblatt Bros., Inc., 1942, 128 F.2d 778. "But the court in that case did not have the advantage of the guidance given by the Supreme Court decisions of Walling v. Jacksonville Paper Company and Higgins v. Carr Brothers Company [1943, 317 U.S. 572, 63 S.Ct. 337, 338, 87 L.Ed. 468] * * *." Walling v. American Stores Co., supra, 133 F. 2d at page 846. Moreover, the Seventh Circuit, in Standard Oil Co. v. Federal Trade Commission, 7 Cir., 1949, 173 F. 2d 210, seems to have abandoned its view of "commerce" as expressed in Goldblatt Bros., supra.

   Appellee urges that the Sixth Circuit case of Allesandro v. C. F. Smith Co., 6 Cir., 1943, 136 F.2d 75, is also in conflict with what we hold. A close reading of that case, however, indicates that the court's determination of noncoverage rested on a view of Section 13(a) (2) of the Act, which was overruled by the Supreme Court's decision in A. H. Phillips, Inc. v. Walling, 1945, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095. See Montgomery Ward & Co. v. Antis, 6 Cir., 1947, 158 F.2d 948, 950.

8. 256 F.2d at page 758.

9. *"Provided,* That this authority to sue shall not be used by the Secretary of Labor in any case involving an issue of law which has not been settled finally by the courts, and in any such case no court shall have jurisdiction over such action or proceeding initiated or brought by the Secretary of Labor if it does involve any issue of law not so finally settled." 29 U.S.C.A. § 216(c).

10. Mitchell v. Emala & Associates, Inc., 4 Cir., 1960, 274 F.2d 781, 782.

   The Congressional history is inconclusive on the question of the scope to be given the proviso of Section 16(c) which limits the Secretary's right to sue to cases in which the issues of law involved are "settled." See Conference Report No. 1453, Oct. 17, 1949 (to Accompany H.R. 5856, reprinted in 2 U.S. Code Cong.Serv., 81st Cong., 1st Sess. p. 2251, at page 2272 (1949). See also, 95 Cong.Rec. 14936, 14937, 14938, 14941 (October 18, 1949). See generally, Note, 63 Harv.L.Rev. 1078 (1950).

   We believe our construction of the Section 16(c) proviso comports with the "overriding congressional purpose" of the section. Cf. Phillips Petroleum Co. v. State of Wisconsin, 1954, 347 U.S. 672, 681, 74 S.Ct. 794, 98 L.Ed. 1035.

11. See also Phillips, Inc. v. Walling, 1945, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095.

only to their application to ever-varying factual situations.

After the parties had presented their proof in this case, the court adjourned with an agreement to reconvene in two days for the purpose of receiving amendments to defendant's answers and stipulations as to the amounts which would be due certain employees if they were found covered by the Act. At this hearing the court relieved the defendant of its stipulation that four employees had filed claims with the Secretary of Labor for unpaid compensation. The effect of this action was to oust the Secretary of the authority to press their claims.[12] The ground that the defendant advanced for this relief was that he had the impression that the four employees were present in the courtroom at the opening of the trial, when, in fact, as he learned later in the day, they were "far away." His position was that he only agreed to stipulate what the government was in a position readily to prove.

The court below had discretion to "relieve counsel of stipulations to prevent manifest injustice."[13] What manifest injustice was prevented by the court's action in this case is not altogether clear. But, in view of the fact that the Secretary made no offer of proof that his representation of these employees was valid at the time the defendant was pressing for relief from the stipulation, we cannot say that the court below abused its discretion in taking such action.[14]

Because of the view it took of the matter, the court below made no findings on the question of whether the individual plaintiffs devoted a "substantial" part of their work to the interstate operations of the C & P Shoe Corporation. Since it is the activities of the particular employee, rather than the employer, which determine coverage,[15] we remand the case for such findings together with the determination of other issues left open by this appeal.

Reversed and remanded.

---

12. Section 16(c) of the Fair Labor Standards Act provides: "When a written request is filed by any employee with the Secretary of Labor claiming unpaid minimum wages or unpaid overtime compensation under section 206 or section 207 of this title, the Secretary of Labor may bring an action in any court of competent jurisdiction to recover the amount of such claim * * *." 29 U.S.C.A. § 216(c).

13. Laird v. Air Carrier Engine Service, 5 Cir., 1959, 263 F.2d 948, 953.

14. On remand of the case, the Secretary will be presented with another opportunity to offer such proof.

15. See Montgomery Ward & Co. v. Antis, 6 Cir., 1947, 158 F.2d 948.