**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,**

**v.**

**Fred T. LUNSFORD d/b/a Gulf Oil Distributor, Defendant-Appellee.**

**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,**

**v.**

**J. B. THOMAS, Jr., d/b/a Gulf Oil Distributor, Defendant-Appellee.**

Nos. 17745, 17746.

United States Court of Appeals
Sixth Circuit.

Aug. 22, 1968.

Rehearing Denied Nov. 21, 1968.

Carin Clauss, Atty., Dept. of Labor, Washington, D. C., for appellant; Charles Donahue, Solicitor of Labor, Bessie Margolin, Associate Solicitor, Robert E. Nagle, Allen H. Sachsel, Attys., Dept. of Labor, Washington, D. C., Jeter S. Ray, Regional Counsel, Nashville, Tenn., on brief.

Jack M. Irion and James L. Bomar, Jr. Shelbyville, Tenn., for appellees; Bomar & Shofner, Shelbyville, Tenn., of counsel.

Before O'SULLIVAN, CELE-BREZZE, and COMBS, Circuit Judges.

COMBS, Circuit Judge.

These actions were brought by the Secretary of Labor to enjoin the defendants-appellees from violating the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. Lunsford was charged with violating the minimum wage, overtime and record keeping provisions of the Act, and Thomas with violating its overtime, record keeping, and child labor provisions. Both defendants are distributors for Gulf Oil Corporation, Lunsford at Greeneville, Tennessee and Thomas at Johnson City, Tennessee.

Defendants contend that they are not engaged in interstate commerce, and that their employees are not within the Act's general coverage; also that, in any event, they are exempt from the overtime requirements of Section 207 in that they come under the exemptions of Section 213(b) (10) [1].

The cases were heard together by the District Judge without a jury and have been heard and considered together in this Court.

There is no dispute as to any of the material facts. Each of the defendants operates under a consignment agreement with Gulf for the distribution of Gulf petroleum products, which comprises about 95 percent of his total sales. Under the agreements, Gulf consigns the products to the defendants at an invoice price. In the usual course of business, defendants' sales price is determined by the invoice price, although it is possible for them to invoice these products to themselves and fix their own sales price. Gulf retains ownership of the products until they are sold and defendants are responsible to Gulf for any loss of product.

Defendants are required to transmit daily to Gulf sales and delivery statements and credit paper. Daily deposits of monies and receipts are made in a local bank to Gulf's credit. On the last day of each month defendants transmit to Gulf a detailed statement of sales, deliveries, and inventories and net sales commissions are then remitted to each

---

[1]. 29 U.S.C. § 213(b) The provisions of section 207 of this title shall not apply with respect to—

    \*     \*     \*     \*     \*

(10) any employee of an independently owned and controlled local enterprise (including an enterprise with more than one bulk storage establishment) engaged in the wholesale or bulk distribution of petroleum products if (A) the annual gross volume of sales of such enterprise is not more than $1,-000,000 exclusive of excise taxes, and

(B) more than 75 per centum of such enterprise's annual dollar volume of sales is made within the State in which such enterprise is located, and (C) not more than 25 per centum of the annual dollar volume of sales of such enterprise is to customers who are engaged in the bulk distribution of such products for resale.

Effective February, 1967, Section 213(b) (10) was repealed and its provisions substantially included in an amendment to Section 207(b) (3).

distributor. Gulf retains the right to require each defendant to handle orders for shipments of Gulf stock in his possession.

Defendants are authorized to, and do, use the words "Gulf Oil Products Distributor" on their business stationery, and on tickets, buildings, signs, storage tanks, and rolling stock. They are required to maintain their own public and employer's liability and workmen's compensation insurance, finance their own sales promotions, and extend credit not authorized by Gulf at their own risk. They hire, fire, pay, and control their own employees without interference from Gulf. Neither the defendants nor their employees participate in Gulf's insurance or retirement plans. The defendants pay their bills for utilities, taxes, and licenses, and own their rolling stock. Lunsford has a permanent investment of $58,000 in his business and Thomas has invested $175,000. From time to time Gulf personnel make suggestions relating to sales promotion or management practices, but on at least one occasion such a suggestion was totally ignored by one of the defendants.

Gulf owns the permanent physical plants from which defendants operate, consisting of offices, warehouses, bulk storage tanks, and land. Defendants lease these plants from Gulf under an agreement calling for a "nominal" monthly rent. The lease provides it will be automatically extended from year to year in the absence of notice of intention to terminate. Defendants have no authority to alter or paint structures or equipment without Gulf's written consent, and carry no insurance on the physical plant. Gulf can declare a forfeiture and repossess the premises upon defendants' default or failure to perform any covenant of the agreement. Termination of either the consignment agreement or the lease automatically terminates the other.

Each of the defendants has a TBA [Tires, Batteries and Accessories] Jobber Sales Agreement with Gulf under which he purchases these products and acquires title to the goods. Transactions involving these products account for about four percent of each defendant's business.

Gulf has assigned each defendant a sales territory. All customer service stations served by the defendants have a "Contract of Sales" with Gulf under which they agree to purchase, receive, and pay for specified Gulf petroleum products according to specified terms. The Class "A" service stations are either leased or sub-leased directly from Gulf; sales to these customers comprise 80 to 85 percent of the total sales of each defendant. The remaining sales are made to independent dealers whose pumps, tanks, and signs belong to Gulf.

Light oil products, namely, gasoline, kerosene, and diesel fuel, are consigned to the defendants from Gulf's bulk storage terminal at Knoxville, Tennessee, to which they are transported by pipeline from Gulf's facilities at Port Arthur, Texas. Terminal demand is determined by Gulf on the basis of its contracts with customers serviced by defendants and by other distributors, with adjustments made for such variables as weather and market trends. Specific quantities of a given product are put into the pipeline at Port Arthur for a designated terminal destination. However, no individual customer order is being filled and no identification of an ultimate sale is made at the time of shipment from Texas; shipments are commingled both in the pipeline and at the Knoxville terminal. The terminal serves as a distribution and temporary storage point from which definite amounts of petroleum are moved to defendants' bulk storage plants. Products consigned to Lunsford are delivered to his plant by Gulf, but Thomas moves the petroleum from the terminal in his own trucks.

The District Judge held:

(1) Defendants' employees are within the general coverage of the Act because they participate in the business of purchasing, receiving, and selling tires, batteries, and accessories received from

outside the state. McComb v. Herlihy, 161 F.2d 568 (4th Cir. 1947).

(2) Both defendants have failed to comply with the minimum wage and overtime provisions of the Act.

(3) The defendant Thomas has on one occasion violated the child labor provisions of the Act, but there is no likelihood of further violations of this nature.

(4) Both defendants have failed to keep the records required by the Act.

(5) Defendants' employees are not within the coverage of the Act by reason of their handling light oil products; these products are fungible goods which lose their identity as interstate commerce when they come to rest in Gulf's storage tank at Knoxville, and subsequent transportation of these products within Tennessee is intrastate commerce.

(6) Defendants are exempt from the overtime requirements of the Act by reason of Section 213(b) (10).

(7) The request for injunction was denied.

■ There is substantial evidence to support (1), (2), (3), and (4) and we affirm. We reverse as to (5), (6), and (7).

■ We hold that defendants' employees are covered by the Act not only by reason of their handling tires, batteries, and accessories received from outside the state but also because they handle light oil products transported from outside the state. It is clear to us that the light oil products remain in "commerce" within the meaning of the Act until delivered to service stations under the terms of defendants' agreements with Gulf.

It is our view that these products are in practical continuity of transit from the time they leave Gulf's facilities at Port Arthur, Texas until they are delivered to the intended customers in Tennessee, and the Knoxville storage tanks serve only as an intermediate step in that movement. Such is the holding in Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460 (1943), which we think is decisive on this issue. The rule of *Jacksonville Paper Company* has been followed in many later cases. Mitchell v. C & P Shoe Corporation, 286 F.2d 109, 112 (5th Cir. 1960); Mid-Continent Petroleum Corporation v. Keen, 157 F.2d 310 (8th Cir. 1946); A. H. Phillips, Inc. v. Walling, 144 F.2d 102, 104 (1st Cir. 1944), affirmed 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095; Walling v. Mutual Wholesale Food & Supply Co., 141 F.2d 331, 338–339 (8th Cir. 1944). Some of the limitations to the rule have been carefully delineated by Judge Simons, speaking for this Court in Allesandro v. C. F. Smith Co., 136 F.2d 75, 149 A.L.R. 382 (6th Cir. 1943), and Montgomery Ward & Co. v. Antis, 158 F.2d 948 (6th Cir. 1947), cert. denied 331 U.S. 811, 67 S.Ct. 1202, 91 L.Ed. 1831.

The District Judge relied on Atlantic Coast Line R. Co. v. Standard Oil Co., 275 U.S. 257, 48 S.Ct. 107, 72 L.Ed. 270 (1927), and United States v. Great Lakes Pipe Line Company, 328 F.2d 79–83 (8th Cir. 1964). We do not consider those cases to be controlling here.

In *Atlantic Coast Line*, the local intrastate distributor (Standard) took title to the oil after it had entered the state and moved it within the state to its own customers. Here, there is no change in ownership; title remains in Gulf until the products are delivered to the customers.

In *Great Lakes Pipe Line*, the other case relied on by the District Judge, the question was whether there was a sufficient break in the continuity of a prior interstate shipment to come within an exemption contained in the Internal Revenue Code. The court held that, in light of the legislative history of the exemption and the factual situation presented, there was such a break. That case is distinguishable on its facts.

Defendants place much reliance on Mitchell v. Livingston & Thebaut Oil Company, 256 F.2d 757 (5th Cir. 1958). That case is not applicable because there title to the products passed to the local distributor at the terminal storage tanks

prior to delivery to intrastate customers of the distributor. Thus, there was a break in the continuity of the interstate transit. We agree with the Secretary that Mid-Continent Petroleum Corporation v. Keen, supra, is more applicable to this case than is *Mitchell*.

We also hold that defendants are not exempt from the overtime provisions of the Act by reason of Section 213(b) (10).

The test is whether the business is "independently owned and controlled" and is stated in the conjunctive.

We look first to the subject of ownership. Gulf owns the buildings and storage facilities used by defendants in their business. Defendants use these facilities by paying a nominal monthly rental under a lease which is valid only so long as they continue to operate in compliance with their consignment agreements with Gulf. The customers serviced by defendants hold sales contracts with Gulf and most of these customers rent their facilities from Gulf. To the extent that the customer clientele could be considered a property right, the ownership is in Gulf. While it is true that defendants own their rolling stock, control their employees, and have a substantial investment in their business, they do not have all of the elements of ownership usually associated with an independently owned business.

■ Conceding arguendo that defendants meet the requirements of ownership, they still fail the test of independent control. Gulf is a solicitous "big brother" in the operation of their business. In the usual course of business, defendants' sale price on light oil products is determined by Gulf's invoice price. Gulf retains title to the products prior to sale and to the proceeds thereafter, and has the right to terminate all agreements at the end of any contract year. From these and other facts summarized above, it is apparent that defendants do not have independent control of their business. See Burriss v. Texaco, Inc., 361 F.2d 169 (4th

Cir. 1966); Gulf Refining Co. v. Brown, 93 F.2d 870, 116 A.L.R. 449 (4th Cir. 1938); Gulf Refining Co. v. Fox, 11 F.Supp. 425 (S.D.W.Va.1935); Ashland Refining Co. v. Fox, 11 F.Supp. 431 (S.D.W.Va. 1935).

■ The legislative history of Section 213(b) (10) supports our view that defendants' business is not independently owned and controlled within the meaning of the Act. An interpretative bulletin issued shortly after the section was enacted further supports this view, 29 C.F.R. Part 794. Exemptions of this nature are to be limited to those clearly falling within the terms of the exemption statute. Arnold v. Ben Kanowsky, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); West Kentucky Coal Co. v. Walling, 153 F.2d 582, 584 (6th Cir. 1946).

The cases of United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947) and Gulf Oil Corporation v. United States, 57 F.Supp. 376 (W.D.Pa. 1944), relied on by the District Judge, are not controlling on this point. Those cases deal with employer-employee relationships. It is admitted in this case that the defendants hire and control their employees, but that is only one factor to be considered in determining whether they independently own and control their business within the meaning of the statute.

In view of what we have said above, the Secretary is entitled to an injunction enjoining the defendants from further violations of the Act.

The defendants argue that the conclusions reached by the District Judge are actually findings of fact or, in any event, inferences drawn from established facts, and that the findings are not clearly erroneous. We do not consider it necessary here to differentiate between findings of fact and conclusions of law. If it should be conceded that we are dealing with findings of fact, we hold that they are clearly erroneous.

Reversed and remanded for proceedings consistent with this opinion.

**698**

## ORDER

The petition for rehearing en banc having been transmitted to all members of the Court in regular active service, pursuant to Rule 35(b), Federal Rules of Appellate Procedure, and no judge having requested a rehearing en banc; and the petition for rehearing having been considered by the panel that rendered the decision.

It is ordered that the sentence on page 7 of the opinion which reads: "Defendants are bound by contract to distribute Gulf products exclusively, and definite sales territories have been assigned to them by Gulf." is deleted.

It is further ordered that the petition for rehearing is denied.