**FLOTKEN'S WEST, INC., a Corporation, Plaintiff,**

v.

**NATIONAL FOOD STORES, INC., a Corporation, Defendant.**

No. 68 C 433(3).

United States District Court,
E. D. Missouri, E. D.

March 27, 1970.

Susman, Willer, Rimmel & Elbert, St. Louis, Mo., for plaintiff.

Shifrin, Treiman, Schermer & Sussman, St. Louis, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER

REGAN, District Judge.

This is an action by the operator of a retail grocery supermarket seeking treble damages based on defendant's alleged violation of the Robinson-Patman Price Discrimination Act (Section 13, Chapter I, Title 15 U.S.C.).

Plaintiff's store is located at 9643 Olive Boulevard in St. Louis County, Missouri. Defendant is the operator of a chain of self-service retail supermarkets in a number of states including Missouri. One of its 45 stores in the St. Louis Metropolitan area is located across the street from plaintiff's store. Originally located at 9656 Olive Boulevard, defendant's store was relocated at 9612 Olive Boulevard. Both parties sell similar grocery commodities.

The complaint alleges that in the course of commerce, defendant "discriminated in the price of commodities of like grade and quality as sold by defendant to different purchasers, to-wit: by the sale of said commodities at lower prices at (its Olive Boulevard location) than prices for the identical commodities at other of" defendant's locations within the metropolitan St. Louis area, and that "(t)he effect of said discrimination has been or may be substantially to lessen

competition or tend to create a monopoly in a line of commerce and to injure, destroy, or prevent competition with customers of both defendant and plaintiff."

After extensive discovery conducted by both parties and with the trial setting close at hand, defendant filed a motion for summary judgment on the ground that there is no genuine issue as to any material fact which would entitle defendant to judgment as a matter of law.

The Robinson-Patman Act provides in part:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, *where either or any of the purchases involved in such discrimination are in commerce * * *.*"

It is thus apparent, and plaintiff "fully agrees" [1] that recovery cannot be had under the Robinson-Patman Act unless one or more of the discriminatory sales is in interstate commerce. In this case, the thrust of plaintiff's complaint is that defendant, one of plaintiff's competitors in the retail grocery business [2] has discriminated between defendant's customers by selling from time to time certain items at its Olive Boulevard store at a lower price than that at which it sold the same item to those who patronized others of its stores in the St. Louis Metropolitan area.[3] Hence, the basic question posed by the motion for summary judgment is whether, under the uncontroverted material facts, the sales at defendant's retail self-service St. Louis area stores are "in commerce."

That defendant is engaged in interstate commerce is not controverted. On this issue, we note that defendant purchases in other states large quantities of merchandise which is shipped to its warehouse in St. Louis and from there distributed in smaller lots to defendant's individual stores.[4] At the store, the cases and cartons of merchandise are broken, and the individual cans and other items priced and placed on the self-service shelves or otherwise displayed to customers.

Other background facts, stated in skeletonized general terms, are that during the period involved, defendant advertised, usually by means of newspapers, circulars or "flyers" distributed to residents of the neighborhood in which the Olive Boulevard store is located, selected items of merchandise at prices lower than the prices it charged for the same merchandise at others of its stores in the Metropolitan St. Louis area, for the obvious purpose of attracting neighborhood patronage to that store. It is equally obvious that only a comparatively few of the thousands of items normally stocked in supermarkets were so specially priced at the Olive Boulevard store.

It is not contended that defendant had any specific customer in mind as a purchaser of the "specials." Under plaintiff's theory, a customer at the Olive Boulevard store, either lured by the advertised low-price "specials" or seeing

1. We quote from its memorandum in opposition to defendant's motion for summary judgment.

2. The record discloses that there are other major competitors. In addition to stores operated by giant grocery chains such as A & P and Kroger, local chains (Bettendorf and Schnucks) operate stores in the trade area involved, although none of their stores are in such close proximity to plaintiff's as that of defendant.

3. As to some of the sales complained of, the discrimination was by offering more stamps or other premiums with the purchase of a particular item than were given with the purchase of such item at the others of defendant's stores.

4. For purposes of the present motion, defendant concedes that some, at least, of the sales relied upon by plaintiff as discriminatory are of goods so shipped in commerce. In addition, some merchandise is drop-shipped from out of state to particular stores.

the bargain-priced merchandise on display while shopping in the store, would take the individual can or package from the shelf or other display area to the checkout counter for bagging and payment, thereby completing the purchase. So, too, random customers in defendant's other stores would similarly make cash-and-carry purchases of identical articles, but at a higher price.

Plaintiff relies upon such cases as Pevely Dairy Co. v. United States, 8 Cir., 178 F.2d 363 (a criminal prosecution under the Sherman Act for an alleged price-fixing conspiracy) and Foremost Dairies, Inc. v. F.T.C., 5 Cir., 348 F.2d 674. These decisions were premised on the finding that fluid milk, a highly perishable commodity incapable of storage as ordinary merchandise, flows in interstate commerce in a constant stream, with only negligible processing, from the farm to the dairy to be sold and delivered daily to the ultimate consumers. Neither case considered the question of whether an individual *retail store sale* of milk, much less of another commodity, to a random purchaser was a sale "in commerce."

So, too, plaintiff's reliance upon Mitchell v. C & P Shoe Corporation, 5 Cir., 286 F.2d 109, is misplaced. *Mitchell* was a Fair Labor Standards Act case which involved only the question of whether the employees at the warehouse of a chain shoe store were within the Act. The shoes were shipped to the warehouse from manufacturers outside the state and held there for later delivery to the shoe chain's retail outlets. On the authority of Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460, the Court held that there was a "practicable continuity of movement of the shoes *through* the warehouse to the defendant's own retail stores, so that the interstate character of the shoes in the course of their journey to the chain stores was not interrupted by their brief pause at the warehouse." However, nothing in *Mitchell* supports the proposition that the subsequent purchase of a pair of shoes by a random customer at one of the chain's retail stores would necessarily be "in commerce."

Nor did Standard Oil Co. v. Federal Trade Commission, 340 U.S. 231, 71 S. Ct. 240, 95 L.Ed. 239, also cited by plaintiff, involve sales at a retail establishment. There, an interstate producer and refiner sold bulk gasoline to large "jobber" customers in Detroit at a lower price than it sold like gasoline to smaller service station operators in the same area. What the Supreme Court held was simply that Standard's temporary storage of the gasoline, either at a marine terminal or in nearby bulk storage stations in the Detroit area, did not deprive the gasoline of its interstate character.

Cases such as Moore v. Mead's Fine Bread Co., 348 U.S. 115, 75 S.Ct. 148, 99 L.Ed. 145, and Atlas Building Products Co. v. Diamond Block & Gravel Co., 10 Cir., 269 F.2d 950, are equally inapplicable. Neither involved purchases by random customers at a retail store. In *Moore*, a wholesale bakery servicing towns in both Texas and New Mexico out of its New Mexico bakery engaged in predatory below-cost price-cutting of its bread products in New Mexico but not in Texas. The profits of the interstate sales were used to underwrite the losses of the intrastate price-cutting compaign. *Atlas* also involved a comparable situation. In each instance the defendant was essentially a one-product concern. More importantly, the discrimination in those cases pertained to cut-priced sales made in one state and higher priced sales of the same item made in another. By contrast, all of the sales involved in the present case, both those of the cut-priced "specials" at the Olive Boulevard store and those of the same items at the other stores, were made in one area of a single state.

In our opinion, the "discriminatory" sales involved in this case do not come within the purview of the Robinson-Patman Act. It may be said here, as in

Walker Oil Company v. Hudson Oil Company of Missouri, 5 Cir., 414 F.2d 588:

> "(T)he sales (in defendant's retail stores) are local, intrastate retail sales. They are made * * * to whatever random purchasers may wander in desiring to purchase (a particular item) at the set price. The sales are completed entirely upon the premises."

*Walker Oil,* in which certiorari was denied January 19, 1970, demonstrates the distinction, insofar as Robinson-Patman is concerned, between the flow of gasoline from a producer to retail dealers, as in Standard Oil Co. v. Federal Trade Commission, supra, and subsequent purchases by random customers from the dealers at their place of business.

*Walker Oil* was a suit by a competitor against a gasoline distributor (Hudson Oil Company) which operated 48 retail gasoline stations in 20 states. The gasoline, purchased at wholesale by Hudson in interstate commerce, was transported by independent carrier to Hudson stations in Mobile, Alabama and Pensacola, Florida, 60 miles apart. At each station, Hudson sold the gasoline to random purchasers of the general public but at frequently different prices by comparison between the two stations. In this situation, the Fifth Circuit held that the sales were not "in commerce" within the meaning of the Robinson-Patman Act, so that the price differentials between the two stations did not constitute discrimination violative of the Act.

More recently, the Fifth Circuit has applied its *Walker Oil* decision to retail sales consummated on the store premises of a supermarket grocery chain, holding that such sales to random purchasers are not "in commerce" within the Robinson-Patman Act, even though the products sold by the chain derived from out of

state. Cliff Food Stores, Inc. v. Kroger, Inc., 5 Cir., 417 F.2d 203.

Another Fifth Circuit case in point on this issue is Hiram Walker, Incorporated v. A & S Tropical, Inc., 5 Cir., 407 F.2d 4, certiorari denied, 396 U.S. 901, 90 S.Ct. 212, 24 L.Ed.2d 177. In that case, wholesale distributors of liquor in Florida purchased the liquor out of state and sold it to retail establishments within the State of Florida. In the course of their business the distributors granted quantity discounts to some of plaintiff's retail competitors in alleged violation of the Robinson-Patman Act. The Court held that summary judgment should have been granted to the distributors for the reason that their sales to retail dealers were not made in interstate commerce.

Factually, of course, there are some differences between *Hiram Walker* and the present case, in that the distributors' business in *Hiram Walker* was limited to the State of Florida and they did not themselves transport any of the liquor into that state. We do not believe these differences decisive, inasmuch as the liquor unquestionably "flowed" in interstate commerce from the out-of-state manufacturer to the distributors' Florida warehouses, with the purpose and intent on the part of both the manufacturer and distributor that it be sold to retail dealers. *Hiram Walker* is a much stronger case than the instant one for the application of Robinson-Patman, since it involved sales out of a distributor's warehouse to identified customers whose requirements were known in advance, as distinguished from sales to random customers who chance to enter a retailer's store.[5] And since, in the situation involved in *Hiram Walker*, the sales to the retail dealers were held not to be "in commerce", it is all the more

5. In most Robinson-Patman cases, the discrimination charged is in favor of known, specific customers, the discriminatorily low price not being available to others. In the present case, defendant is not charged with discriminating either in favor of or against specific, named or identified individuals. For practical purposes, all that was required of *any* person desiring to obtain the benefit of the lower prices was simply that he come to the Olive Boulevard store to make his purchase of the items.

apparent that the sales by National to random customers at its retail stores are not "in commerce." The fact that certiorari was denied in *Hiram Walker* is not without some significance under the circumstances.

We believe that the results reached in *Walker Oil, Cliff*, and *Hiram Walker* were correct,[6] and that the rationale of those cases compel the grant of summary judgment in favor of defendant in this case. The material facts which demonstrate as a matter of law that plaintiff cannot prove a Robinson-Patman Act claim against defendant are not in dispute.[7] Since none of the allegedly "discriminatory" sales meet the "in commerce" requirement of the Act, the existence of possible disputed facts on other issues is legally immaterial for the purpose of ruling defendant's motion for summary judgment. We express no opinion as to whether it is possible for plaintiff to state and prove a claim based on the Sherman Act, although in view of the "extremely competitive" situation in the St. Louis Metropolitan area, it would appear rather doubtful that it could do so. Cf. Cliff Food Stores, Inc. v. Kroger, Inc., supra.

Accordingly, IT IS HEREBY ORDERED that defendant's motion for summary judgment be and it is hereby SUSTAINED, and the Clerk is directed to enter judgment herein in favor of defendant and against plaintiff dismissing this cause at plaintiff's costs, without prejudice to any claim plaintiff might hereafter assert against defendant based on the Sherman Antitrust Act.

6. These cases were decided by the same court as were Mitchell v. C & P Shoe Corporation and Foremost Dairies, Inc. v. F.T.C., supra.

7. After the motion for summary judgment had been briefed, orally argued and fully considered by the Court, the attorneys for both parties were informed that the motion would be sustained and the trial setting vacated. Thereafter, while the formal opinion of the Court was in course of preparation, plaintiff filed an affidavit of its counsel to the effect that defendant

purchased or otherwise acquired "substantial" quantities of merchandise outside the state which defendant transported to Missouri in its own trucks for the purpose of resale in its stores after "temporary" storage in defendant's warehouse. Defendant thereafter filed a counter-affidavit on personal knowledge. Wholly apart from the obvious deficiencies of plaintiff's affidavit—for example, it is not made on personal knowledge of the affiant, as required by the rule—we find nothing therein which creates an issue of fact precluding summary judgment.