**ROSEMOUND SAND AND GRAVEL CO.**

**v.**

**LAMBERT SAND AND GRAVEL CO., Inc., et al.**

**Civ. A. No. 70–3.**

United States District Court,
E. D. Louisiana,
Baton Rouge Division.

Aug. 18, 1971.

John L. Fulbright, Beaumont, Tex., L. B. Ponder, Jr., Ponder & Ponder, Amite, La., for plaintiff.

R. Boatner Howell, Jr., Baton Rouge, La., for Lambert Sand and Gravel Co.

Carlos G. Spaht, James F. Field, Kantrow, Spaht, Weaver & Walter, Baton Rouge, La., for Feliciana Sand and Gravel Co. and Holloway Gravel Co.

E. GORDON WEST, Chief Judge:

This is a suit for treble damages brought pursuant to Title 15 U.S.C.A. § 15, which provides that:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

Plaintiff, Rosemound Sand and Gravel Company, is a partnership qualified to do business in Texas and Louisiana, and the defendants, Lambert Sand and Gravel Company, Inc., Holloway Gravel

Company, Feliciana Sand and Gravel Company, Inc., and Allen Thomason, are all residents of Louisiana doing business only in the State of Louisiana. All defendants have filed motions to dismiss this suit on the ground that this Court lacks jurisdiction over the subject matter of the suit because of the fact that no interstate commerce is here involved. It is these motions that are now before the Court.

Interrogatories have been propounded and answered and extensive depositions have been taken and filed in the record. Thus, while being cognizant of the fact that summary judgment in anti-trust cases is not usually favored, Fortner Enterprises, Inc. v. United States Steel Corp., 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969), there is more than ample probative evidence before this Court on which to base a decision on these motions without further evidentiary hearing. After due consideration of all of the evidence in this record, it is the opinion of this Court that the motions to dismiss for lack of jurisdiction should be granted.

Weymouth Construction Company (Weymouth) entered into a contract with the United States Corps of Engineers for the construction of certain concrete mattresses to be used to prevent erosion of the banks of the Mississippi River in West Feliciana Parish at St. Francisville, Louisiana. This job was known as the "Matfield Job." The defendants, all Louisiana citizens, each operate sand and gravel producing facilities in the St. Francisville area. In furtherance of their contract, Weymouth and others organized the plaintiff firm known as Rosemound Sand and Gravel Company (Rosemound) whose primary purpose it was to furnish sand and gravel for the Matfield Job. Rosemound was organized, according to its Articles of Partnership, as a "Limited Partnership" pursuant to the Texas Uniform Limited Partnership Act and as a "Partnership in Commendum" under Articles 2835–2851 of the Louisiana Revised Civil Code. It lists its principal place of business in

Texas as Beaumont, and in Louisiana as "the Parish of West Feliciana." Rosemound purchased some of its equipment from Weymouth and Weymouth agreed to purchase the output of the Rosemound sand and gravel plant in West Feliciana Parish to the extent necessary to fulfill its contract with the Corps of Engineers for the Matfield Job. Plaintiff now contends that the defendants, after hearing of the arrangement between Weymouth and Rosemound, notified Weymouth that if it, Weymouth, purchased any of its needed sand and gravel from Rosemound that they, the defendants, would refuse to sell any sand and gravel to Weymouth if Rosemound was unable to furnish the required amounts of those materials to Weymouth. As a result thereof, according to the plaintiff, Weymouth refused to buy any sand and gravel from Rosemound because they believed that Rosemound might be unable to furnish the total amount of sand and gravel needed by Weymouth to fulfill its contract with the Corps of Engineers. Plaintiff alleges that as a result of these activities on the part of defendants, Rosemound has been reduced to a state of financial insolvency and it now demands of the defendants the sum of $447,000 as treble damages for the loss of its plant and the sum of $2,559,600 as treble damages for estimated loss of three years' profits, plus $75,000 as attorney's fees. All defendants move for summary judgment on the grounds that they are not engaged in interstate commerce and that their intrastate activities have no substantial effect on interstate commerce, and that therefore this Court is without jurisdiction over this case.

The uncontroverted affidavit of Sonny Johnston, President of Feliciana Sand and Gravel Company (Feliciana), states, inter alia, that (1) Feliciana is and has been engaged in the business of mining and selling sand and gravel solely within the confines of the State of Louisiana; (2) Feliciana's principal customers are ready mix concrete concerns and contractors operating in East Feliciana, West Feliciana, and Pointe Coupee Parishes;

(3) Among its customers is Weymouth, the prime contractor for the Matfield Job in St. Francisville, Louisiana. The Matfield Job is a ready mix concrete operation by which sand and gravel from the St. Francisville area is made into concrete blocks and sold to the United States Corps of Engineers for placement on the banks of the Mississippi River in West Feliciana Parish, which is wholly within the confines of the State of Louisiana; (4) In 1969 Feliciana sold sand and gravel to the Weymouth Construction Company and the Fordice Construction Company, the latter company having formed a joint venture partnership with Weymouth for the Matfield Job; (5) Feliciana was not engaged in the sale or purchase of any materials destined for consumption or transportation outside of the State of Louisiana; (6) No sand or gravel mined or produced outside the State of Louisiana has ever been delivered or offered for delivery to the Matfield Job by Feliciana; (7) Feliciana never sold any sand or gravel outside of Louisiana nor did it ever bid on any works outside of Louisiana; and (8) Rosemound has never been in substantial commercial production of sand and gravel and has never made any sales outside the State of Louisiana.

The uncontroverted affidavits of H. H. Holloway, Jr., President of Holloway Gravel Company (Holloway), and Paul A. Lambert, President of Lambert Sand and Gravel Company (Lambert), are essentially the same as the affidavit of Mr. Johnston except that they relate to the operations of Holloway and Lambert.

Answers to the interrogatories propounded by the plaintiff reveal the following with regard to Holloway: (1) Holloway did not deliver any sand, gravel, or other products outside of the State of Louisiana during 1968 and 1969 nor were any of the products sold by it used outside of the State of Louisiana; (2) The only customer to whom sand and gravel was sold who had an address outside of the State of Louisiana was Weymouth Construction Company, whose address was shown to be Memphis, Tennes-

see. Weymouth was the major customer of Holloway in 1968–69, but all products purchased by it were received and used in the State of Louisiana at St. Francisville on the Matfield Job; (3) In 1968–69 Holloway, as purchasing agent for South Shore Railway Company, to whom it had leased its assets in 1964, made 128 purchases of tools, supplies, and equipment. Of these, only nine were made from out of state sources. These nine amounted to $30,176.30 out of a total of $136,199.12. Two purchases out of these nine accounted for $29,030.45 of this $30,176.30. These two purchases were for steel castings, wire, and electrode guides. These purchases as stated above, were of tools, supplies, and equipment, and did not in any way constitute purchases of equipment for resale. (This Court, in Bettie Mae Bradford Robinson v. South Shore Railway Company, CA 66–28, November 22, 1966, has previously held that South Shore Railway Company was not engaged in interstate commerce.) The answers to the interrogatories reveal, in addition, with regard to Lambert, that " * * * virtually all the sales [purchases] were from points originating in the State of Louisiana and the goods were shipped to purchaser [Lambert] from points originating in the State of Louisiana and the shipment was made by motor freight or by buyer or seller's trucks originating in the State of Louisiana and terminating in the State of Louisiana."

Nothing in the several depositions taken in this case in any way contradicts the facts asserted by the defendants in these affidavits. But plaintiff asserts that even under these facts this Court has jurisdiction under the Federal Anti-Trust Laws, and particularly under the provisions of Title 15 U.S.C.A. §§ 1, 2, 13, and 15. Thus the narrow question presented now is whether or not the activities engaged in by these defendants were such as to constitute interstate commerce within the meaning of the various statutes relied on by plaintiff.

As indicated in United States v. Kramer, 355 F.2d 891, 896 (CA 7–1966),

the test to be applied varies considerably with the nature of the case involved. In that case, the Court noted that:

"The test of interstate commerce under the Hobbs Act differs from that under the Sherman Act. Carbo v. United States, 314 F.2d 718, 732 (9th Cir. 1963), cert. denied 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498. Similarly, decisions construing the interstate commerce requirement under the Fair Labor Standards Act are not controlling as to the requisite manner or degree of interference with commerce that may justify conviction under the Hobbs Act."

Even within the area of the Anti-Trust Laws themselves different standards have been applied in order to determine whether or not interstate commerce has been involved. Thus, when the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1 and 2, is involved, it has been held that all that is required in order to find that interstate commerce is involved is to find that the transactions or business activities involved are either within the flow of interstate commerce or have a "direct and substantial" effect on interstate commerce. LoCicero v. Humble Oil & Refining Co., 319 F.Supp. 1133, 1135 (E.D.La.1970) states that:

" * * * it has been repeatedly held that the interstate commerce requirement of the Sherman Act is satisfied if it is shown either that the defendant committed the unlawful acts in the flow of interstate commerce or that the acts, though done in local or intrastate trade, nevertheless had a direct and substantial effect on interstate commerce."

As distinguished from these requirements, in order to find jurisdiction under the Clayton Act and the Robinson-Patman Act, 15 U.S.C.A. §§ 13–14, it is apparently necessary to find that the persons involved in the alleged illegal activities be "engaged in commerce" and that their products eventually actually "flow in interstate commerce." See Standard Oil Company v. FTC, 340 U.S.

231, 71 S.Ct. 240, 95 L.Ed. 239 (1951); Willard Dairy Corp. v. National Dairy Products Corp., 309 F.2d 943 (CA 6–1962); LoCicero v. Humble Oil & Refining Co., supra; Walker Oil Co. v. Hudson Oil Co. of Mo., 414 F.2d 588 (CA 5–1969), cert. denied, 396 U.S. 1042, 90 S.Ct. 684, 24 L.Ed.2d 686 (1970).

A scrutiny of the uncontested facts in this case lead us to the conclusion that none of the jurisdictional requirements of either the Sherman Anti-Trust Act, the Clayton Act, or the Robinson-Patman Act are met in this case. Little need be said about the requirements of the Clayton Act and the Robinson-Patman Act. The evidence is abundantly clear that the defendants are not directly engaged in interstate commerce, and it is uncontroverted that their products do not and never have flowed in interstate commerce. They sell locally only and their products are used entirely within the confines of the State of Louisiana. Thus the jurisdictional requirements of these Acts have clearly not been met.

The remaining question is whether or not the jurisdictional requirement of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1 and 2, have been met. These sections provide, in pertinent part, that:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal: * * *" 15 U.S.C.A. § 1.

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States * * * shall be deemed guilty of a misdemeanor * * *." 15 U.S.C.A. § 2.

The test to be applied in determining whether or not the particular conduct complained of constitutes "interstate commerce" within the purview of the

Sherman Anti-Trust Act are (1) Whether or not the activities involved are "within the flow of interstate commerce," or (2) Whether or not the activities involved have a "direct and significant" effect on interstate commerce. If the activities involved are not within the actual flow of interstate commerce, and if they have no direct, substantial, or significant effect on that flow, then those activities are not such as to state a claim upon which relief can be granted under the provisions of the Sherman Anti-Trust Act. See "Anti-Trust Developments" 1955–1968, American Bar Association, 1968, at page 39.

The affidavits and depositions filed in this case establish conclusively that (1) neither the products sold by the defendants nor the activities engaged in by the defendants "flow in interstate commerce," and (2) the activities engaged in by these defendants have no direct, substantial or significant effect upon interstate commerce. While plaintiff makes contrary assertions "on information and belief," still, after having been granted ample time within which to file countervailing affidavits or other probative evidence in support of its conclusion, it has failed to do so. Thus the evidence in this record presents no material issue of fact as to this point. Even though it is established that Weymouth, the purchaser of defendants' products, is, in connection with some of its unrelated activities, engaged in interstate commerce, there is no showing whatsoever that defendants' activities had any effect, substantial or otherwise, on Weymouth's interstate activities. There is also no merit to plaintiff's claim that because it was qualified to do business both in Texas and Louisiana, that this fact alone would impart an interstate flavor to defendants' activities. The uncontroverted fact is that plaintiff did no business whatsoever at any location outside of the State of Louisiana. Regardless of what its hopes and aspirations for the future might have been, the simple truth is that it was not and had never been engaged in interstate commerce. Its hopes for the future are far too speculative to lead to the conclusion that the defendants' activities in this instance had any "direct and substantial" effect on commerce between the States.

Lastly, plaintiff contends that because the Mississippi River is interstate in character, and that because the "mattresses" manufactured by Weymouth were used on its banks, this fact alone is sufficient to bring the defendants, as suppliers of sand and gravel to Weymouth, within the prohibition of the Sherman Anti-Trust Act. We cannot agree. The sand and gravel never moved in interstate commerce; the "mattresses" into which the sand and gravel was incorporated never moved in interstate commerce: and neither the activities of Weymouth nor the defendants in constructing and placing the "mattresses" on the bank of the river in West Feliciana Parish, Louisiana, had any direct or substantial effect on interstate commerce. The "mattresses" were not intended to affect in any way the flow of the river nor its use. They were merely for the protection of land located wholly within the State of Louisiana, i. e., to keep it from eroding.

It is thus the conclusion of this Court that none of the activities of the defendants were in interstate commerce as contemplated by any of the Federal Anti-Trust Statutes, and therefore, as both a matter of fact and of law, this Court lacks jurisdiction over the subject matter of this complaint and defendants are entitled to summary judgment as prayed for, dismissing this suit at plaintiff's cost. Judgment will be entered accordingly.