### AMAJAC, LTD. OF GEORGIA
v.
### NORTHLAKE MALL et al.
### Civ. A. No. 16561.

United States District Court,
N. D. Georgia,
Atlanta Division.
April 2, 1973.

**170**

Gambrell, Russell, Killorin, Wade & Forbes, Atlanta, Ga., for plaintiff.

Cofer, Beauchamp & Hawes, Atlanta, Ga., Piper & Marbury, Baltimore, Md., for defendants.

## ORDER

EDENFIELD, District Judge.

Defendants are owners of Northlake Mall, a suburban shopping center with three major department stores and a number of specialty shops, whose primary entrances and show windows front on an enclosed mall. The mall can be an undeniably pleasant place to shop, with its arboreal atmosphere created by cascading fountains and live stands of ficus and mahogany, whose branches reach from the main floor to the second level mezzanine and beyond. Among other attractions, the mall affords its customers the opportunity of doing their shopping in the evening. Most stores are open six nights per week until 10:00 p. m. These evening hours are not a matter of happenstance, but are explicitly required by the Mall in its lease agreements with its tenant store owners. While evening hours may be convenient for some and profitable for others, for at least one tenant they are neither—and hence this lawsuit.

Plaintiff Amajac, Ltd. is a Georgia corporation selling cutlery and cutlery accessories under its franchise name "Hoffritz." Amajac alleges on behalf of itself and others similarly situated that the defendants, by requiring minimum hours of operation, have violated Sections 1 and 2 of the Sherman Act,[1] 15 U.S.C. §§ 1, 2, and that under Sections 4 and 16 of the Clayton Act it is entitled to injunctive and declaratory relief as well as treble damages. The case is presently before the court on the question of whether it should be allowed to proceed as a class action and on plaintiff's motion for an order requiring re-

---

1. Section 1 provides in effect that every contract or conspiracy in restraint of trade or commerce among the several states or with foreign nations is illegal. Section 2 provides that every person who shall monopolize or conspire with any other person to monopolize any part of such trade or commerce shall be guilty of a misdemeanor and be punished by a fine or imprisonment, or both.

sponse to discovery requests. Briefs have been submitted by the parties on both questions and a hearing was held on the class action question on January 30, 1973.

Counts I and IV of plaintiff's complaint are based on the Sherman Act, and Counts II and III assert claims under state law. Plaintiff asks that the action be maintained as a class action with respect to the antitrust issues and consequently the court will be concerned in the present proceeding only with Counts I and IV.

Count I alleges that defendants and their co-conspirators J. C. Penney Co., Sears, Roebuck and Co., and Davison's have conspired to restrain interstate trade through the requirement in subparagraph (s) of plaintiff's lease, a provision common to other leases between defendants and store owners in the Mall, that plaintiff must remain open for business the same hours as "the two department stores" but in any case not later than 10:00 p. m.[2] The general allegation is that the "conspiracy of Defendants and the co-conspirators directly and substantially affects interstate commerce by limiting and restricting the hours of operation of tenants at Northlake Mall so as to destroy competition among and between said tenants with respect to hours of operation." The nature of the alleged restraint is explained most succinctly by plaintiff in paragraph 14 of its amended complaint: "From the opening of Northlake Mall in October, 1971 until February 1, 1972, Plaintiff, at the insistence of Defendants, attempted to conform to the unlawful requirements of the aforesaid para-

graph 's' of its lease with Defendants by keeping its place . . . of business open Monday, Tuesday, Wednesday, Thursday, Friday and Saturday from 10:00 A.M. until 9:30 P.M., consistent with the operating hours of the department stores at Northlake Mall. Plaintiff's business on Tuesday, Wednesday and Saturday nights was so poor that it lost substantial sums of money in staying open on the aforesaid nights, which losses impaired Plaintiff's ability to operate its business economically and successfully and thereby most effectively to serve the public in Plaintiff's activity in interstate commerce." Paragraph 14 of the complaint goes on to allege that the business of other tenants has also been adversely affected by the minimum hours requirement. The names of these tenants, however, are not disclosed.

Count IV makes essentially the same claim as Count I, with the additional allegation that defendants have discriminated in the enforcement of the hours provision of subparagraph (s), by allowing some specialty stores to close early and by requiring other stores, including plaintiff, to remain open. Plaintiff states that "Muse's, Lilli Rubin, Allen's and Zachary's are also tenants at Northlake Mall and have places of business in close geographical proximity to the premises of the Plaintiff. The clientele of [these stores] are [sic] similar to the clientele of the plaintiff in their shopping abilities and habits," and yet, "Muse's, Lilli Rubin, Allen's and Zachary's advertise that they do not stay open on Tuesday, Wednesday and Saturday nights." Thus, plaintiff alleges, defendants' stated intention to enforce the

2. The relevant portion of paragraph 4, subparagraph (s), provides that plaintiff agrees to: " * * * open the premises for business not later than 10:00 A.M. on each regular business day and to keep the same open for business during the remainder of the business day, and to also keep the premises open for business on those nights and for the same hours that two department stores at the shopping center are open for business, *except that tenant is not obligated to open for business on Sunday and legal holidays and is only obligated to stay open for business not later than 10:00 p.m.*" Except for the underscored portion, this section of plaintiff's lease is found in the leases held by the large majority of stores in the Mall.

lease provision against plaintiff is arbitrary, capricious and discriminatory, and such discriminatory enforcement of the lease provision shows that the anticompetitive effect of the minimum hours requirement is not based on legitimate business considerations, but is inherently unreasonable.

While plaintiff has asked that the action be maintained as a class action with respect to both Counts I and IV, the court finds that Count IV merely duplicates the basic allegation that subparagraph (s) is an unreasonable restraint of trade. As the court presently views the case, the issue to be determined is not whether defendants' alleged fixing of minimum hours is violative of the antitrust laws per se, but rather whether the economic benefits attendant to the hours provision are outweighed by its anti-competitive effects (if any), and if so, whether there is open to the defendants a less restrictive alternative which will secure the benefits without the anti-competitive injury.[3]

Consequently, while the alleged discrimination practiced by defendants between plaintiff and the exempted specialty stores mentioned above may be relevant to the possible economic benefits associated with the minimum hours requirement, it does not set forth a separate claim, and the court need only be concerned with the appropriateness for class action treatment of the general antitrust claim asserted in Count I.

For the complaint to proceed as a class action the prerequisites of Rule 23(a), Fed.R.Civ.P., must, of course, be met. The additional requirements for this action, as plaintiff has recognized,[4]

are those contained in paragraph (b)(3) of the rule. On the basis of the record thus far the court finds that plaintiff has failed to carry its burden of showing that the class is so numerous that joinder of all members is impracticable, and that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3), Fed.R.Civ.P.

The lack of these essential elements stems from the nature of the class that plaintiff seeks to represent. Plaintiff states that under Count I the class is composed of "those tenants, approximately 90 in number, who lease premises at Northlake Mall from the defendants under leases which contain the restrictive clause as to hours of operation which is the subject of plaintiff's complaint . . . ." Conspicuously absent from this definition is any requirement that the business of the class members be damaged as a result of the common lease provision, and as thus composed, the proposed class is not a proper plaintiff under the factual allegations of this antitrust action.

The question to be decided in this litigation, at least for purposes of determining the plaintiff class, is not whether, based on an allegation of anti-competitive injury as to one tenant, i. e., plaintiff, the lease provision constitutes a per se violation of the antitrust laws. If that were the question, then whether or not the provision had an anticompetitive effect on the remaining tenants might be irrelevant, and the class conceivably could consist of all tenants with a similar lease provision, irrespective of their individual economic injury.[5] As

3. *See* Chicago Board of Trade v. United States, 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683 (1918); Savon v. Shell 309 F.2d 306, 309 (4th Cir. 1962), cert. denied 372 U.S. 911, 83 S.Ct. 725, 9 L.Ed.2d 719 (1962); and P. Areeda, Antitrust Analysis (1967), ¶ 348. *See also* cases cited and discussion in note 5, *infra.*

4. Brief for Plaintiff in Support of the Issuance of a Class Action Determination Order Under Rule 23, at 9.

5. The per se test, which the Supreme Court has applied to price-fixing United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); division of markets, United

stated previously, however, the question is whether the lease provision's anti-competitive effect, as measured by the experience of all the tenants required to stay open during evening hours, outweighs whatever economic benefits the provision may produce. The proper class, therefore, is composed of those tenants whose ability to compete has been adversely affected by the minimum hours clause in subparagraph (s).

Plaintiff comes close to proposing substantially this same definition for the class it deems appropriate to maintain the action under Count IV of the complaint. Again, however, plaintiff fails to assign as a necessary characteristic of the prospective class member the requirement of competitive injury.[6] Were this a case of alleged price-fixing where the anti-competitive effects of the practice are presumed, it could be assumed that all members of the purported class had suffered injury to one degree or another. As noted above, because of its

per se characterization, once the fact of a conspiracy to fix prices was found, the practice could be enjoined as violative of the antitrust laws without a weighing of individual competitive injury against general economic benefit. In the present case, however, as defendants have pointed out, evening hours which may be unprofitable for a florist, may be the most profitable hours for a furniture store. Thus the economic injury engendered by the lease provision is far from being clear with respect to the tenants of Northlake Mall.

After some eleven months of litigation, despite plaintiff's general allegation of other tenants being similarly aggrieved, the only tenant specifically alleged to have been harmed in its ability to compete is the plaintiff itself. While 90 leases may contain the restrictive provisions, the court considers it to be highly probable that not all 90 tenants have suffered injury or that they are even dissatisfied with having to main-

United States v. Addyston Pipe & Steel Co., 85 F. 271 (6th Cir. 1898), aff'd. 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 group boycotts, Fashion Originators' Guild of America v. Federal Trade Comm., 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941); and tying arrangements, Northern Pacific Ry. v. United States, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed. 2d 545 (1968), has not been extended to include minimum or maximum hours provisions. The decision of the Supreme Court in Meat Cutters v. Jewel Tea Co., 381 U.S. 676, 85 S.Ct. 1596, 14 L.Ed. 2d 640 (1965), cited by plaintiff in support of its position, was not concerned with whether a maximum hours requirement was or was not a per se violation of the Sherman Act. Rather, the question before it was whether the collective bargaining agreement containing the hours provision was exempted from the application of the antitrust laws. Insofar as Justice White's opinion did touch on the question, 381 U.S. 676, 85 S.Ct. 1596, at n. 6, a number of cases were cited in which hours limitations were upheld as being reasonable, among them Chicago Board of Trade v. United States, 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683 (1918), thus evincing, at the very least,

that the test to be employed in determining a violation is one based on the reasonableness of the restriction, and not the application of a per se rule.

To the extent that Court I alleges that the lease provision constitutes a per se violation of the antitrust laws, the court does not at this time foreclose receipt of evidence or argument on that issue. For purposes of determining the relevant class, however, the court finds that plaintiff's per se challenge is insufficiently supported to warrant the establishment of a class whose existence is entirely premised on plaintiff's success in proving, not that the provision is violative of the antitrust laws, but that under a particular theory, it is *per se* violative.

6. Plaintiff states that the class under Count IV of the complaint is composed of "those tenants who have been forced by the defendants to remain open Tuesday, Wednesday and Saturday nights by action taken unreasonably, arbitrarily and capriciously by defendants in enforcing the restrictive provisions of the aforesaid leases as against the tenants without study or investigation to determine whether the circumstances and conditions existing at the time justified the enforcement of such restrictive conditions."

tain evening hours. Not one other tenant has sought to intervene in this action, and while the court will not hesitate to utilize the provisions of Rule 23 when appropriate, neither will it go out of its way to create a class where a class of interested litigants is not already in existence. Morris v. Burchard, 51 F.R.D. 530, 536 (S.D.N.Y.1971). Given that the existence of a class of plaintiffs has yet to be shown, and given the liberal joinder provisions of Rule 20, Fed.R.Civ.P., should other tenants wish to participate, the court does not find that a class action would be superior to an action involving multiple plaintiffs. The action, therefore, will not be allowed to proceed as a class action at this time. If, however, after additional discovery plaintiff is able to show to the court that there are a significant number of tenants who claim that their businesses are being hurt by the minimum hours provision, the court will entertain a motion that the action be allowed to proceed as a class action.

 With respect to plaintiff's motion to compel response to discovery requests, the court notes that out of 13 paragraphs in plaintiff's letter of July 21, 1972, objecting to defendants' replies, only four paragraphs (Nos. (2), (7), (8) and (12)) presently appear to raise any substantial controversy. Plaintiff's motion will accordingly be denied and counsel for the parties shall, within ten days, meet and confer at a mutually convenient time and place in a good faith effort to settle all objections and opposed matters with respect to plaintiff's interrogatories. It shall be the responsibility of counsel for plaintiff to set up such a conference, but if the parties are unable to agree on a time and place for same, the court shall be notified and will set the time and place for such conference.

If counsel are unable to settle their differences, then they shall formulate and file with the court, within 20 days, a written stipulation specifying separately and with particularity each matter and each issue which remains to be determined, and the contentions and points and authorities of each party as to each remaining matter or issue. The stipulation must be set forth in one document which shall contain all subject matter and issues in dispute and the contentions and points of each party, and shall not refer the court to other documents in the file.

In accordance with the foregoing, plaintiff's request that the above-captioned action be maintained as a class action is Denied. Plaintiff's motion for an order compelling responses to discovery requests is Denied, and the parties will proceed to resolve their differences in the manner set forth hereinabove.

So ordered, this 30th day of March, 1973.